Turner, J.,
 

 dissenting. With the exception of paragraphs four and five thereof I agree with the syllabus of the majority opinion. I do not agree with paragraphs four and five of the syllabus for the reason that the syllabus in the case of
 
 In re Martin, Jr.,
 
 139 Ohio St., 609, 41 N. E. (2d); 702, the syllabus in the case of
 
 Ex parte Schoepf,
 
 74 Ohio St., 1, 77 N. E., 276, 6 L. R. A. (N. S.), 325; and the syllabus in the case of
 
 Ex parte Jennings,
 
 60 Ohio St., 319, 54 N. E., 262, 71 Am. St. Rep., 720, correctly state the law of Ohio which should control the decision in the instant case. The
 
 Schoepf
 
 and
 
 Jennings cases
 
 have long formed the pattern of practice in this state.
 

 In the case of
 
 Ex parte Jennings, supra,
 
 this court held:
 

 
 *109
 
 “A witness whose deposition is being taken before-an officer may refuse to testify to facts not relevant to the issues in the case in which the deposition is to-be read, if the disclosure of such irrelevant facts would be injurious to the business of the witness; and, if imprisoned by the officer for such refusal, he may be-discharged on
 
 habeas corpus.”
 

 In the decision of the
 
 Jennings case
 
 this court did not. consider that it was reversing the case of
 
 DeCamp
 
 v.
 
 Archibald,
 
 50 Ohio St., 618, 35 N. E., 1056. In respect of that case Judge Shauck said at page 330:
 

 “In
 
 DeCamp
 
 v.
 
 Archibald,
 
 so confidently relied upon, to justify this imprisonment, it was clearly pointed out in the opinion that the question which the witness-refused to answer was competent. Indeed it does not. seem to have been finally determined in any case that the personal liberty of the citizen is of so little importance that it should yield to a desire to gather food for idle gossip.”
 

 Judge Shauck also pointed out that the settled law on the subject was as stated in Church on Habeas Corpus, section 319, which he quoted at page 329 as follows:
 

 “ ‘The law has not invested such officers (notaries public) with arbitrary and omnipotent power to compel a witness to answer all questions however incompetent, irrelevant, immaterial or inadmissible. A refusal to answer such questions is not necessarily a contempt. To have power to commit for contempt, the notary must exercise his functions substantially in the manner and under the circumstances prescribed and contemplated by law. It has, therefore, been held that a witness will be discharged on
 
 habeas corpus
 
 where he has been committed for contempt by a notary public for failing or refusing to produce papers and testimony that-are incompetent and inadmissible.’ ”
 

 
 *110
 
 In 14 Ohio Jurisprudence, 35, Section 36, it is said:
 

 "The general rule as to the scope of the examination of a witness, who is not a party to the action or proceeding, in the taking of his depostion, is that it may extend to any matter which is pertinent to the issues tendered or made, but not to any matter which is incompetent, irrelevant, immaterial, or privileged. The supreme court has expressly declined to sustain the contention that a witness who is testifying in a deposition may be compelled to produce any document, or disclose information as to facts, which by any possibility may become pertinent on the trial of the case, and has held, on the contrary, that the right to compel the production of a document, or to elicit other evidence, is to be determined on the basis of its relevancy and competency under the issues as they stand at the time of the taking of the deposition. In other words, a pai’ty has no greater privilege under the law in the taking of a deposition, with respect to the scope of the examination of the witness and the production of books and papers, than he would have on the trial of the case, under the same state of the pleadings and issues.”
 

 The syllabus of
 
 Ex parte Jennings, supra,
 
 fits the facts in the'instant case like a glove. The only basis for the deposition is a bill of discovery filed in an estate. No claim was made that Martin, Jr.,' or his •company was in any way indebted to the estate or that either of them had any property of any kind belonging to the estate. Neither Martin, Jr., nor his company is a party to the litigation. Under such a commission and the circumstances of this case must they meekly submit and allow their business files to be ransacked and their business secrets and transactions laid open to the view of their competitors?
 

 In the course of Judge Bell’s opinion it is said: 44It is claimed by counsel for the petitioner that the ex-
 
 *111
 
 animation was not in good faith and was conducted only for the purpose of prying into the business affairs of the witness. There is nothing in this record to justify that claim.” With this conclusion I cannot agree. The record discloses that there had been litigation between the Martin Brothers Box Company and Southern Kraft Corporation and of the 976 questions put to Mr. Martin (practically all of them relating to' the Southern Kraft Corporation litigation) there were but 25 which he refused to answer. It would take entirely too much space to set out and discuss the various questions relating to Southern Kraft Corporation, the refusal to answer which has been held contempt, but here are two of the group-two questions:
 

 ‘‘Q. 136. Prior to the filing of this petition by Southern Kraft Corporation against your company demanding the sum of $89,402.06 and interest, did they make a demand upon you for the payment of that sum?”
 

 “Q. 192. Bid .Southern Kraft threaten suit before instituting the action against your company?”
 

 It will be recalled that the Mr. Schwartz referred to in the record appeared on behalf of the estate of William Salzer, deceased. Mr. Eappaport appeared on his own behalf while Mr. Boggs was Martin, Jr.’s, attorney and had represented the Martin Brothers Box Company in the Southern Kraft litigation. Mr. Eappaport had also represented the Martin Brothers Box Company. The deposition was being taken" ‘ ‘ In the Matter of the Application of Benjamin Salzer, an Executor of the Last Will and Testament of William Salzer, Deceased,'to Discover Certain Property of Decedent Claimed to be withheld,” and was made upon the application of Emanuel Schwartz as attorney for petitioner. The record does not otherwise show any pending case in which the deposition might be offered.
 

 
 *112
 
 Immediately after the witness Martin, Jr., was .•sworn, the record shows that the following took place:
 

 “The witness: Can I ask Mr. Schwartz a question?
 

 “Mr. Schwartz: Go ahead.
 

 “The witness: Mr. Schwartz, I would like to be .assured that this deposition being taken is not going to be handed out outside of the purpose it is being used for, and it won’t get around into the hands of any of •our suppliers or competitors. One of our competitors ¡seems to have one of the depositions now. He is-making a lot of noise today with it. That is my reason for asking, and he says he received it directly from .you.
 

 “Mr. Schwartz: Well, Mr. Martin, I don’t think I am free at this time to give you such an unqualified-assurance. I shall be mindful of not only your request but the rationale of your request, and I certainly have no desire nor have I had any desire at any time, either consciously or unwittingly, to have any tiling get about which might be detrimental to you.
 

 “Mr. Rappaport: Mr. Schwartz, does that go for ■everybody else connected with this litigation?
 

 “Mr. Schwartz: I think, Mr. Rappaport, that has nothing to do with the deposition that is being taken now of Mr. Martin.
 

 “Mr. Rappaport: Mr. Schwartz, that happens to be the very core of a lot of this litigation. I am now asking you who has seen the depositions in these various cases, and by that I want to know the names of the parties to whom you have handed them out.
 

 “Mr. Schwartz: Mr. Rappaport, I am examining witnesses here today in behalf of the petitioner, and I am not discussing extraneous matters with you. * *
 

 “Mr. Martin: Well, at that point there, I don’t feel as though I am going to testify unless I can be assured. Now I know the competitor that has it and he knows me, and he is very free about it. Now if
 
 *113
 
 you are going to do that with my deposition, then I am going to take steps right now to see that I am not going to make one. In addition to that, I want to know if Southern Kraft is going to get any part of this deposition. ’ ’
 

 The record shows no answer to this but shows that Mr. Schwartz immediately began with question one:
 

 “Where do you reside?”
 

 “The witness: I am going to ask my counsel if I am not entitled to something definite from the request that I made, a definite answer from you.
 

 “Mr. Boggs: I think, Mr. Schwartz, that we are entitled to have an assurance that this deposition is only going to be used for the purpose for which it is being taken, and that is for the purpose of submitting it to the Surrogate to determine the issues between your client and Mr. Rappaport. We are perfectly willing on that basis to have Mr. Martin testify if we have that assurance from you.
 

 “Mr. Schwartz: Now I ask that the Commissioner direct the witness to answer the question.
 

 “The commissioner: Will you repeat the question? (Question read by reporter as follows: ‘Where do you reside?’)
 

 “The commissioner: The witness will answer the question.
 

 “A. I don’t know as I am going to answer. I am telling you right now; listen, this is a competitive proposition.
 

 “Mr. Boggs: Until we have that assurance from you, Mr. Schwartz, I shall advise the witness to decline to answer any questions in this deposition. I will say to you very frankly we are perfectly willing to have him give his testimony on condition that this deposition that 'be gives is used solely and only for the purpose for which it is taken under the order of the Surrogate of New York county in the mat
 
 *114
 
 •ter of the application of Benjamin Salzer, an executor of the last will and testament of William Salzer, ■deceased, to discover certain property of the decedent •claimed to be withheld. We are perfectly willing to have Mr. Martin give his testimony pursuant to the order of the Surrogate Court to be used solely and ■only in this case.
 

 ‘ ‘ Mr. Rappapoxl: Provided Mr. Schwartz gives that .assurance on the récord.
 

 “Mr. Boggs: Yes.
 

 “Mr. Schwartz: Mr. commissioner, the order of the Surrogate, a certified copy of it, is in your possession, and no such condition is made there, and the attempt on the part of Mr. Rappaport aixd Mr. Boggs to impose a provision in their order which does not appear is abortive and has no validity or effect, and I respectfully submit this witness should be directed to .answer pursuant to the order and the commission axxd the subpoenaes served upon him. * *
 

 ‘ ‘ Mr. Rappapoit: Mr. commissioner, I am now asking you to squarely rule whether the law of Ohio permits the taking of a deposition not for use upon the trial of an action in the court of original jurisdiction, 'but for the purpose of peddling it around to competitors of the witness, to business rivals and to people in .general who are shown to have no conceivable proper interest in seeing the deposition. * *
 

 ‘
 
 ‘
 
 Mr. Schwartz: I respectfully submit, on Mr. Rappaport’s request, that that is not before the commissioner. What is before the commissioner here is the requirement that the witness, Mr. Martin, be required to answer the questions in pursuance of the order made by Surrogate D.elehanty and the commission certified out of that court.
 

 “Mr. Boggs: Mr. commissioner, in view of the fact that Mr. Martin has stated that he had already received direct information from one of his competitors that
 
 *115
 
 some of the testimony taken before you has come into their hands, and in view of the fact that Mr. Schwartz, as counsel here for the applicant or for the executor of the last will and testament of William Salzer, has it within his power to see that these depositions do not .get into the hands of anyone except the court, we again make our statement and request of Mr. Schwartz, which is very simple for him to give us, the assurance that if he wants the deposition of Mr. Martin we ask his cooperation to protect Mr. Martin and his business by not showing this deposition of Mr. Martin’s to anyone except to exhibit it to the court in line with the •order of the court for the purpose for which it was taken, to wit, to determine this controversy between Mr. Salzer and Mr. Rappaport, and if Mr. Schwartz will give us that assurance, Mr. Martin will give his •deposition. Without that assurance I shall advise Mr. Martin -to protect his business that he decline to answer any questions here in connection- with this deposition.
 

 “Mr. Schwartz: Without stating or indicating what I might or I might not deem entirely appropriate as to my conduct, irrespective of any implication that might be drawn by my refusal to discuss the matter, whether properly or no, I ask that the commissioner •direct the witness to answer the last question.
 

 “The commissioner: As commissioner, I direct the witness to answer. * * *
 

 “Mr. Boggs: Mr. Schwartz, of course you are begging the question now because the request for assurance that we asked of you related to the deposition as a whole and we do not consider it fair to ask questions •in piece-meal of this kind. You know perfectly well that the reason we asked for this assurance from you is in giving Mr. Martin’s deposition we are considering the deposition as a whole and not the question of what his name is, or whether- or not he is president of the company or where he resides, but we are directing
 
 *116
 
 o,ur inquiry to you for assurance that his deposition when completed will not be given out to anyone except to the court, and it is for that reason that we have advised Mr. Martin to decline to answer any questions, and we shall continue to so advise him until we have your assurance, which is a reasonable request, and if you are concerned with this litigation that is now pending in New York, and solely with that, and not interested in in jurying Mr. Martin or in his business, you should be perfectly willing to give that assurance.
 

 “Mr. Schwartz: I have no concern other than the litigation which is now pending in New York. I neither have a desire nor wish of any kind to injure Mr. Martin or his business. I still state with all due respect to the position that you have taken here this morning, Mr. Boggs, in behalf of Mr. Martin, that I don’t think Mr. Martin advances it in good faith when objection is made to the questions that I have put. I could well see that such a statement by me would be unwarranted possibly when a question is asked which might, if known to a competitor, be potentially inimitable
 
 [sic]
 
 to his interest, and I think what ought to be done in good faith is to allow this examination to go on, in any event, until the witness feels that a question is asked which might hurt him in his business and then the question would be presented to the commissioner for ruling, but until that time I think there is no basis for the witness’s refusal to answer.”
 

 There is much more of this in the record but at no point am I able to find where Mr. Schwartz gave the assurance that this deposition would not be handed to competitors as Mr. Martin positively testified that other depositions had been so handled. It must be remembered that Mr. Rappaport’s objections were being made on his own behalf. The order of the Surrogate directing the issuance of a commission to take testimony contains the following provision:
 

 
 *117
 
 ‘ ‘ Ordered that the actual disbursements of respondent Jacob Rappaport for traveling to and from the place of the examination and for living expenses during the continuance of the examination will be charged .against the assets of the within estate, to the extent that they are reasonable * *
 

 An example of the way the questions were raised with the basis of objection thereto may be seen from .the following:
 

 “Q. 40. So that your contract with Southern Kraft was negotiated in New York? A. Yes, sir.
 

 “Q. 41. But your specifications of quantities and '.the items of merchandise went to the Chicago office? A. Yes, sir.
 

 “Q. 42. Now who handled the contract in New York; who negotiated for the Southern Kraft -Corporation? A. Myself, with Mr. Gransden.
 

 “Q. 43. Is that Mr. Vern F. Gransden? A. Yes, and Mr. Dick Cullen.
 

 “Q. 44. And when was the contract negotiated? A. It was either in 1932 or 1933.
 

 “Q. 45. And for how long a term was that contract .made ?
 

 “Mr. Boggs: Well, just a minute. I object to that. .It is incompetent and immaterial in this proceeding here. That is purely a business matter, Mr. Schwartz, not covered by anything in the subpoena here or the .Surrogate’s order.
 

 “Q. 46. Did the term of that contract extend for .a period beyond April, 1935?
 

 “Mr. Boggs: Object to that also.
 

 “Mr. Schwartz: I ask that the commissioner direct the witness to answer those two questions.
 

 “The commissioner: The witness is directed to .answer.
 

 “Mr. Rappaport: I now object. Both of these ques
 
 *118
 
 tions are not within the issues as to which the examination is permitted by the order of Judge Delehanty.
 

 “Mr. Schwartz: I renew my request that the commissioner direct the witness to answer the two questions.
 

 “The commissioner: The commissioner makes the same order.
 

 “Mr. Boggs: I advise Mr. Martin that those matters are wholly without the order issued by the Surrogate and/or the subpoena served on Mr. Martin, and are purely matters relating to business affairs between his company and the Southern Kraft Corporation, and have no connection with William Salzer or the William Salzer estate, and advise him to decline to answer the questions. * * *
 

 ‘ ‘
 
 The commissioner: In answer to both of you gentlemen, my understanding as contained in the instructions and some law I have read with reference to this matter is, as I have repeatedly suggested through this hearing, that the ultimate admissibility of these various matters is for the determination of the Surrogate, and whether or not the matter is relevant or material is up to him. Therefore, the course I follow is that the question should be answered in the given case, and then that submitted to the Surrogate at the proper time for his ruling.”
 

 In the course of Judge Bell’s opinion in the instant case it is said: ‘ ‘ some of these thirteen questions were undoubtedly subject to objection; however this offered no ground for the witness to refuse to answer.”
 

 I turn now to the question of the right of the commissioner to require the production of books and papers belonging to either the witness or the Martin Brothers Box Company. The record discloses the following :
 

 “Q. 729. Have you produced your check book stubs,
 
 *119
 
 Mr. Martin, for the year 1937? A. Have we produced them?
 

 “Q. 730. That is right. A. Have we been asked to produce them?
 

 “Mr. Rappaport: I .want to repeat again what I have already said. I want the record to show I am again raising the objection that the commissioner has issued subpoenaes that are far broader in scope than the order of Judge JDelehanty authorizes.
 

 “Mr. Schwartz: I ask that the commissioner direct the witness to produce the Martin Brothers Box Company ,check book stubs since April 1st, 1937.
 

 “The commissioner: He is so directed. The witness is directed to produce the check stubs as requested. ’ ’
 

 The refusal to' comply with question 730 is treated by Judge Bell as belonging to group two, the refusal to answer each of which questions has been held by the majority to be an unlawful refusal.
 

 In the journal entry of the Court of Appeals appears the following:
 

 “The court further finds that the petition of said petitioner should be dismissed; that the said Fred Jj Martin, Jr., should be remanded to the custody of said Charles L. Hennesy, sheriff of Lucas county, Ohio,
 
 until he shall produce all of the documents he has refused to produce
 
 * * V’ (Italics mine.)
 

 In the petitioner’s motion for new trial in the Court of Appeals appears the following ground:
 

 “9. The court erred in deciding and finding that said Fred J. Martin, Jr., was lawfully ordered to produce books, records and papers requested to be produced by various of the twenty-five (25) questions in that the production of said books, records and papers requires the disclosure of confidential information relating to the business of the Martin Brothers Box Company, which is not named as being interested in the
 
 *120
 
 discovery proceedings in the Surrogate’s Court, New York county, N. Y.”
 

 In the journal entry of the Court of Appeals overruling the motion for a new trial appears the following:
 

 “It is therefore ordered, adjudged and decreed. * * * that the said Fred J. Martin, Jr., is remanded to the custody of Charles L. Hennesy, sheriff of Lucas county, Ohio, the respondent herein, -until the said Fred. J. Martin shall produce all of the documents he has-refused to produce * *
 

 Here then we have a situation where the president, of a company is being punished for contempt for failure to produce all of the check stubs of his company for a period of more than four years. It is to be observed that no particular check stub is called for.' Theorcler is to produce
 
 all.
 

 Section 11503, General Code, provides:
 

 “A subpoena shall be directed to a person named' therein, and require him to attend at a specified time- and place to testify as a witness. It also may direct, the person it names, to bring with him any book, writing, or other thing under his control,
 
 which he may be compelled to produce as evidence.
 
 (Italics mine.)
 

 In the course of the opinion in
 
 Ex parte Schoepf, supra,
 
 Judge Davis said at page 13:
 

 “It was held in the case of
 
 Rauh, supra,
 
 [65 Ohio St., 128, 61 N. E., 701] that a notary public has power to punish a witness for contempt by. imprisonment' when the witness refuses to obey a subpoena
 
 ducestecum
 
 directing him to bring with him any book, writing or other thing under his control, which he may be-compelled to produce as evidence. What may he be-compelled to produce? And how may he be compelled' to produce it? These questions are clearly answered by Sections 5289 to 5293 inclusive, of the Revised Stat
 
 *121
 
 utes. Section 5289 [now Section 11551, General Code] provides that the court may require the parties to an action ‘to produce books and writings in their possession or power which contain evidence pertinent to the issues,
 
 in cases and under circumstances where they might heretofore have been compelled to produce the same by the ordinary rules of proceeding in chancery/ ”
 
 (Italics mine).
 

 Section 11551, General Code, was enacted on March 6, 1857, 54 Ohio Laws, 23 (Section 5289, Revised Statutes), Section 360, and has not since been changed in substance. While in 6 Wigmore on Evidence (3 Ed.), 439, Section 1856d, it is said:
 

 “The principle of a bill of discovery was never considered to be applicable to
 
 third persons not parties
 
 so as to secure from them before trial a disclosure of possible evidence; just as it was not available against such persons to secure an inspection of documents.”
 

 To this statement Wigmore now adds:
 

 “But under the modern deposition statutes permitting parties more or less freely to take depositions before trial, may not such discovery be effectually •sought? It would be a sound extension of the principle to permit it; the chancery practice was too cautious; modern policy tends to acknowledge this.”
 

 These are mere observations by the author, not •statements of what the law is, and so far as Ohio Is •concerned the books and writings in the possession of .a witness are to be produced only in cases containing evidence pertinent to the issue, in cases and under ■circumstances where they may heretofore have been compelled to produce them by the ordinary rules of ■chancery.
 

 In the instant case counsel is endeavoring to compel ■the production not of specific papers but generally of papers, checks, etc., which may be attached to the de
 
 *122
 
 positions and sent beyond the jurisdiction of Ohio-courts.
 

 Another example of the questions, the refusal to answer which the witness is now being held in contempt, is question 921 which.reads as follows:
 

 “Now have you produced the bills from attorneys received by Martin Brothers Box Company since April 1, 1937?”
 

 The record shows the deposition of the witness was being taken on April 21, 1941. This question calls for the production of bills for more than four years, from the company doing a business of more than $1,500,000 a year. It seems preposterous to punish the president of the company for contempt in refusing to produce all of his company’s check stubs since April 1, 1937, or for refusing to produce attorneys’ bills for a like period of over four years. The record shows that Nolan Boggs and Percy R. Taylor, members of the Bar of this state, conducted the Southern Kraft litigation and there is no charge or claim in the record that either of these attorneys had anything to do with any conspiracy of any kind. The record shows that Mr. Rappaport did act as an attorney in New York for the Martin Brothers Box Company.
 

 It is conceded that the taking of the deposition in this case was a mere fishing expedition. Section 1, Article I of the Constitution of Ohio provides:
 

 "A11 men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety.”
 

 I consider that the witness was within his rights when he refused to answer each and all of the questions under consideration. Each of these questions was not only incompetent and immaterial but privileged.
 

 
 *123
 
 In commenting upon
 
 DeCamp
 
 v.
 
 Archibald, supra,
 
 it is said in 14 Ohio Jurisprudence, 39, Section 39:
 

 “This.holding has been modified by subsequent decisions, however, to the extent that the witness in this situation may, if he chooses, decline to answer, if in his opinion the evidence sought to be elicited by the question is incompetent or irrelevant, as well as where he considers the matter privileged, and, in the event of being committed for contempt on account of such refusal, seek his vindication in a
 
 habeas corpus
 
 proceeding, which would necessarily involve a determination of the question, the legality of the commitment depending upon the legality of the order to answer, and the legality of the order to answer depending, in turn, upon the admissibility of the evidence sought to be elicited by the question propounded, or upon its character as privileged, as the case might be.”
 

 In no instance did the witness’s conduct constitute an unlawful refusal to answer as a witness.
 

 There is no justification in this case for disturbing the settled law of this state.
 

 The judgment of the Court of Appeals should be reversed and final judgment entered discharging the petitioner.
 

 Hart, J., concurs in the foregoing dissenting opinion.