Bettman, J.
 

 Appellant first claims that the commissioner “had no power and authority to commit Mr. Martin,” seemingly predicating this contention on the absence of a certificate by the surrogate to the order of the New York court appointing the commissioner, authenticating the appointment. This authenticating is claimed to be required by Title 28, Section 687, U. S.
 
 *612
 
 Code. Appellant points ont that the order of commitment by the commissioner was dated May 8, 1941, bnt that an exemplified copy of the order appointing the commissioner was not secured until May 29, 1941, and was not received in evidence until June 2, 1941. This objection we hold not well taken. The order of the surrogate appointing the commissioner was dated January 23, 1941, and the commission was issued on February 6, 1941. The commissioner’s order committing Martin for contempt was dated May 8, 1941. The power of the commissioner to commit for contempt is derived from his appointment as a commissioner by the New York court, and from Section 11510, General Code, which statute gives a “court or officer” the power to punish a witness as for a contempt for an “unlawful refusal to answer.”
 

 That a commissioner appointed by a foreign court is an “officer” within the purview of Section 11510, General Code, was expressly decided in
 
 Benckenstein
 
 v.
 
 Schott, Sheriff,
 
 92 Ohio St., 29, 110 N. E., 633. The requirements of authentication referred to in Title 28, Section 687, U. S. Code, go to the
 
 proof
 
 of the appointment of the commissioner, not to the
 
 existence
 
 of his power. The Court of Appeals, accordingly, was correct in holding that the commissioner had the power to commit as for a contempt.
 

 Appellant’s principal assignments of error relate to the action of the Court of Appeals in declining to go into the relevancy and competency of the majority of the questions propounded, refusal to answer which occasioned the commitment. The record discloses that there were twenty-five questions which the witness refused to answer, sixteen upon the ground that they were irrelevant and incompetent, and would require disclosure of matters relating to the witness’s own affairs; and nine to which answers were refused upon the ground that they called for privileged matters. The Court of Appeals gave consideration to the wit
 
 *613
 
 ness’s refusal to answer the nine questions, where refusal was based upon
 
 privilege.
 
 But as to the sixteen questions, to which the witness refused answer on the ground of
 
 irrelevancy
 
 and
 
 incompetency,
 
 the court declined to give consideration thereto,, saying: “It is the conclusion of the court that the relevancy, materiality and competency of the questions objected to on that ground, as to their pertinency to the inquiry being made by the New York court and the issues there involved, are not for this court to determine. In the first place, we are not in position to determine it; nor do we think we are required to do so by the law.” The court then referred to certain statements made by counsel at the taking of testimony by the commissioner, which statements looked in the direction of deferring decisions on the questions of relevancy and competency to the New York surrogate. This aspect will be more particularly considered hereinafter.
 

 This action of the Court of Appeals, accordingly, presents, for decision, the broad question, whether in a
 
 habeas corpus
 
 proceeding to secure the release of a witness who has been committed by a commissioner to prison for contempt because of his refusal to answer certain questions, which refusal was based on the claimed irrelevancy or incompetency of the questions, it is error for the court to decline to pass upon the relevancy and competency of the questions propounded to the witness. The question is of first impression in Ohio, and there is a strange lack of authority on it in other jurisdictions. It should be recalled that Ohio is one of only five states where a notary or foreign commissioner has the power directly to commit for contempt. The question would, however, seem to be easy of solution in the light of fundamental principle and controlling statutory and constitutional provisions.
 

 Section 12161, General Code, provides:
 

 “A person unlawfully restrained of his liberty, or a
 
 *614
 
 person entitled to the custody of another, of which custody he is unlawfully deprived, may prosecute a writ of
 
 habeas corpus,
 
 to inquire into the cause of such imprisonment, restraint, or deprivation.”
 

 From the language of this basic statute it is obvious that the witness, “unlawfully restrained” of his liberty, has a right to have inquiry made “into the causé of such * * * restraint.”
 

 The source of the commissioner’s power to commit for contempt is found in Section 11510, General Code, which provides as follows:
 

 “Disobedience of a subpoena, a refusal to be sworn, except upon failure to pay fees duly demanded, and an unlawful refusal to answer as a witness or to subscribe a deposition, may be punished as a contempt of the court or officer by whom the attendance or testimony of the witness is required. ’ ’
 

 From this provision of the statutes it is obvious that only an “unlawful refusal to answer” can be the basis of a commitment. It results that the unlawfulness of the refusal is the gist of the inquiry. It would seem to be a matter of simple logic that if the question propounded is irrelevant or incompetent it cannot be unlawful to refuse to answer it. Direct authority supports this logic.
 
 Ex parte Jennings,
 
 60 Ohio St., 319, 54 N. E., 262, 71 Am. St. Rep., 720.
 

 Refusal to give a hearing on the questions of relevancy and competency, irrelevancy and incompetencj being the basis of the witness’s refusal to answer the questions propounded, for which he was deprived of his liberty, amounts to a denial of the witness’s constitutional rights. Section 16 of the Ohio Bill of Rights provides in part:
 

 “All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.”
 

 
 *615
 
 “Due course of law,” which has been in the Ohio Constitution since 1802, and which has frequently been held to have a meaning parallel to “due process of law” in the Fourteenth Amendment to the federal Constitution, requires that the party deprived of his liberty shall have a hearing on the issues involved in the deprivation. The Court of Appeals expressly denied to the witness Martin his right to be heard on the lawfulness of his refusal to answer the sixteen questions propounded, which he refused to answer on the ground that they were irrelevant and incompetent.
 

 Denial of a hearing to the witness, in his
 
 habeas corpus
 
 proceeding, on the claimed irrelevancy and incompetency of the questions asked, answers to which he claims lawfully to have refused, constitutes, we hold, a denial to the witness of his remedy by due course of law for the deprivation of his liberty.
 

 The Court of Appeals in arriving at its conclusion quoted a paragraph from
 
 In re Rauh,
 
 65 Ohio St., 128, at pages 135 and 136, 61 N. E., 701. A reading of the syllabus of
 
 In re Rauh
 
 makes it clear that the case is not authority on the question involved here. But the quotation from the opinion referred to does not, we believe, have the meaning given it by the Court of Appeals. The quotation ends with these sentences:
 

 “If the witness assumes to decide these questions [of competency] for himself at the time, unless the interrogatory involves a question of privilege, he must do so at his peril. If he should be right in his decision he would lose nothing; if wrong, he must suffer the consequences.”
 

 It should first be observed that the quoted differentiation between privilege and competency, which indicated the course actually pursued by the Court of Appeals here, was, wé believe, expressly repudiated in the opinion in
 
 Ex parte Schoepf, 74
 
 Ohio St., 1, 77 N. E., 276, 6 L. R. A. (N. S.), 325, where the same judge who wrote the opinion in
 
 In re Rauh, supra,
 
 
 *616
 
 stated at pages 10 and 11: “But it is plain that when the privilege claimed is disputed the witness takes the same chances upon a refusal that he does upon a refusal to answer an incompetent question.”
 

 But however this apparent repudiation of any differentiation between refusal for claimed incompetency or claimed privilege may be, we think there is nothing iñ
 
 In re Rauh
 
 which would lead to the result that the “peril” to the witness was that he would not have the right to be heard on the question of competency in a subsequent
 
 habeas corpus
 
 proceeding. The “peril” and “consequences” referred to, mean, we believe, that he might go to jail by order of the notary, but not that he would languish in jail until, at the pleasure of the litigants in the parent case, the question of competency was determined by the court
 
 m that case.
 
 There is nothing in the language used in
 
 In re Rauh,
 
 which would deny the witness, whose liberty is at stake, a hearing in his
 
 habeas corpus
 
 proceedings on
 
 all
 
 issues involved in the legality of his imprisonment.
 

 Further reliance for the position taken was placed by the Court of Appeals on a statement made at the taking of the deposition by a Mr. Rappaport. The Court of Appeals said in its opinion:
 

 “Significantly, Mr. Rappaport, at the very outset of the taking of testimony by the commissioner, made the following statement at the hearing:
 

 “ ‘Mr. Rappaport: In the event any objection is raised to a question, the stenographer will take down the question and the objection and the ruling will be made in New York at the proper time.
 

 “ ‘The Commissioner: I think,- Mr. Rappaport, that is in accordance with the instructions contained in the commission.
 

 “ ‘Mr. Rappaport: That is our usual procedure. You are merely presiding here without any authority to rule on the admission of evidence.
 

 “ ‘The Commissioner: That is as I understand it.
 
 *617
 
 That is reserved to the Surrogate’s Court in New York.’
 

 “Neither Mr. Rappaport nor counsel for Martin made a single further comment or objection to the commissioner’s statement of his proposed plan or interpretation of his powers, but proceeded with the examination. ’ ’
 

 The record does not disclose any authority in Mr. Rappaport to make any agreement or stipulation relative to the liberty of the witness Martin. The record shows that Mr. Rappaport was a New York lawyer, who the petitioner in the New York discovery proceedings claimed had received moneys as agent or trustee for William Salzer, which moneys were the subject-matter of the discovery proceedings. Rappaport, as respondent, filed an answer in the discovery proceedings, and in the order appointing a commissioner to take testimony, was given leave to join in the examination of' witnesses. Nor did the fact that Martin’s counsel stood by when the above-mentioned statements by Rappaport and the commissioner were made, constitute any bar to Martin’s raising the question of relevancy of the propounded questions in his own
 
 habeas corpus
 
 proceeding. The statements made related to the subject-matter of who should pass on the question of relevancy in the New York proceeding. But an entirely new cause eventuated in Ohio when, the commissioner having committed Martin for contempt, Martin brought a
 
 habeas corpus
 
 proceeding for his release. This
 
 habeas corpus
 
 proceeding was not in contemplation when the above-quoted statements or implied stipulations were made. We conclude that those statements and stipulations have no relation to and no effect upon the
 
 habeas corpus
 
 proceeding.
 

 Nor can we agree with the Court of Appeals’ statement that they “are not in position to determine it” (the question of relevancy and competency). The record discloses that the order of the New York surrogate
 
 *618
 
 appointing the commissioner pointed out, in full détail, seventeen “items” into which the commissioner was authorized to inquire. Here was a definite chart by which, in the
 
 habeas corpus
 
 hearing, the relevancy and competency of the questions asked could be determined.
 

 To the contention that the conclusion herein arrived at means that questions of relevancy and competency will have to be twice determined — once in the Ohio court and again in the New York court — the answer is that there are two proceedings; one, the discovery proceeding in the Surrogate’s Court in New York, and .the other, the
 
 habeas corptts
 
 proceeding in the courts of Ohio. If a second burden is thrown on the petitioner of the New York discovery proceedings, the answer is that the burden flows from his motivating the New York commissioner to commit the Ohio resident to prison for contempt, and the right of the citizen of Ohio to have the legality of his commitment then and there determined. If the issue of that legality depends on the relevancy to the parent proceeding in New York of the questions asked, the determination of that issue cannot be postponed until the New York proceeding, to which the Ohio citizen is not a party, is heard. To do so would be a denial of the Ohio citizen’s constitutional right to a hearing “for an injury done him in his * * * person * * * without denial or delay.”
 

 Having come to the conclusion that it was error for the Court of Appeals to refuse to hear petitioner on the issues of relevancy and competency of the sixteen questions involved — and though it appears that the court did go into the lawfulness of the witness’s refusal to answer the nine questions claimed to be privileged, upholding the commissioner as to six of the nine —nontheless, as the order of commitment was predicated on the refusal to answer the twenty-five questions involved, and the order is indivisible, it follows that the judgment of the court below should be re
 
 *619
 
 versed and the cause remanded for further proceedings in accordance with this opinion.
 

 Ju,dgment reversed and cause remanded.
 

 Turner, Matthias and Hart, JJ., concur.
 

 Weygandt, C. J., and Zimmerman, J., dissent.