Argued July 23, affirmed September 22, respondents' petition for reconsideration denied October 29, appellant's petition for reconsideration denied November 5, 1975, petitions for review allowed March 23, 1976

## TUPPER, *Petitioner, v.* FAIRVIEW HOSPITAL AND TRAINING CENTER et al, *Respondents.*

540 P2d 401

*Henry H. Drummonds,* Eugene, argued the cause for petitioner. With him on the brief were Kulongoski, Heid, Durham & Drummonds, Eugene.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

LANGTRY, J.

Petitioner appeals from an order of the Public Employe Relations Board (PERB) affirming his dismissal from public employment on grounds of "inefficiency * * * insubordination * * * [and] other unfitness to render effective service * * *," (ORS 240.555(1)), alleging both that the dismissal was not reasonably warranted under the circumstances, and that he was deprived of a "legitimate expectancy" of continued employment without due process.

With respect to the question of due process petitioner argues in substance that as a permanent employe of the respondent Fairview Hospital and Training Center he possessed a "property" interest protected by the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, which required "at a minimum" (1) that *prior* to being terminated he should have received both notice of the charges relied upon as a basis for the action, and an opportunity to present "evidence, affidavits, and oral or written arguments or explanations * * *," and (2) that the propriety of the action should be ultimately resolved by a "tribunal or decision-maker" authorized to preside over a de novo evidentiary hearing. Because, it is alleged, these procedural requirements were not met in this case, reinstatement with back pay is obligatory.

Employed at Fairview (an institution for the mentally deficient operated by the Mental Health Division, Department of Human Resources) since June of 1968, petitioner's responsibilities as a psychiatric aide included the supervision and training of "residents" living in one of several dormitory-like "cottages." Among an aide's duties is the preparation and maintenance of records measuring resident progress in various training programs. Testimony before PERB's hearing officer indicated that these records are essential to the operation of the institution. On April 22, 1974 petitioner's supervisor discovered that his "program book"—in which the requisite records were kept—had been misplaced. Petitioner agreed to reassemble the necessary forms by May 1, 1974.

On May 10, 1974, however, the "training data sheets," "program plans," and "master skill sheets" for seven of his residents remained incomplete. Petitioner then assured his superiors that the notebook would be completed by May 24. No progress had, in fact, been made by him on that date.

During the next four weeks his supervisor continued to encourage him to supply the missing records. A memo incorporating the following order and warning was delivered to him by his supervisor on June 21, 1974:

"* * * I have asked that you [bring your new program plans and other material up to date] by July 10th. If this is not done this will be considered insubordination and disciplinary action will follow. You have ample opportunity to get this completed."

Many of the previously missing forms were supplied by petitioner on July 10, but the "master skill sheets" for his residents remained unfinished.

Sometime during the morning of July 15 petitioner was suspended for the day and presented with a memo advising him that "further disciplinary measures" would be taken unless an up-to-date program book was submitted no later than noon of the following day.

Petitioner was ill on July 16, and the deadline was extended to noon of July 17. All but two of the master skill sheets had been finished by that time, but study of the program book disclosed that *none* of the necessary "data sheets" had been brought up to date. Petitioner was again suspended for the remainder of the day and ordered to complete his work by noon of the 18th. The program book remained unchanged on the 18th.

On July 23, 1974 the director of the psychiatric aide staff at Fairview conferred with petitioner's supervisors, reviewed the facts, and recommended to the appointing authority that he be dismissed. On July 24, 1974 the superintendent of Fairview suspended petitioner without pay and dismissed him effective August 2, 1974, notifying him of the statutory grounds for the dismissal—"inefficiency * * * insubordina-

tion * * * [and] other unfitness to render effective service * * *"—in a letter detailing the facts relied upon in support of the action.

■ Petitioner sought and obtained a hearing before PERB, and PERB affirmed petitioner's dismissal, concluding that:

"[Petitioner's] conduct in failing to respond to ten requests, demands and directives from April 22, 1974, until July 17, 1974, indicated a willingness to ignore the requests and demands of his immediate supervisor. This displayed unfitness to render effective service * * *.

"Ten reminders and demands by supervision that an employe perform a task that he had agreed to, and should have performed over a period of April 22, 1974, to July 18, 1974, established [petitioner] as being in breach of [Fairview's] work standards.

"[Fairview] is found to have taken the actions appealed from in good faith and for cause after reasonable notice, and was not arbitrary."①

■ Due process adjudication typically involves two analytically distinct issues: whether the right to due process is applicable in the first instance; and, if so, what specific procedures are "due" in each case. The right itself *only* becomes applicable where one's "property" or "liberty" interests within the meaning of the Fifth or Fourteenth Amendment are at stake. Whether an individual's "entitlement" to permanent

① As an assignment of error petitioner has argued that no reasonable employer would have discharged him based on the facts proved at the hearing as found by PERB, and that PERB failed to find that a reasonable employer would have utilized the "extreme sanction" of dismissal under the circumstances. We interpret the Board's finding that the appointing authority's action was "not arbitrary" to be a finding that dismissal was a reasonable sanction in this case. After reviewing the record we are also satisfied that the order of the Board affirming the dismissal was based upon reliable, probative and substantial evidence. ORS 183.480(7)(d).

employment is sufficient to give rise to a constitutional claim is thus a threshold question in cases of this kind.

The United States Supreme Court held in *Board of Regents v. Roth,* 408 US 564, 577, 92 S Ct 2701, 33 L Ed 2d 548 (1972), that:

"* * * To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits * * *,"

and concluded that when, by the terms of statutes or regulations, a public employe may be discharged *only* for enumerated causes that employe does, in fact, possess a property interest, the deprivation of which must be accompanied by minimum procedural safeguards including some form of notice and hearing.

That petitioner, as a "classified" public employe, might invoke due process requirements in protection of his interest in continued employment would thus seem to be beyond dispute.[2] *See Papadopoulos v. Bd.*

---

[2] Although at the outset petitioner implies in his brief that his dismissal deprived him of "liberty" as well as "property," that position was not elaborated upon here. In light of the specific charges cited by the employer in this case, petitioner's apparent reluctance in this respect would appear to be well founded.

*of Higher Ed.,* 14 Or App 130, 511 P2d 854, Sup Ct *review denied* (1973), *cert denied,* 417 US 919 (1974). The state suggests, however, that a recent plurality opinion in *Arnett v. Kennedy,* 416 US 134, 94 S Ct 1633, 40 L Ed 2d 15 (1974), represents a departure from — a "supplementation of" — the court's holding in *Board of Regents v. Roth,* supra, and that according to the principles expressed by that plurality the extent of petitioner's procedural rights—and those of public employes similarly situated—may no longer be determined by reference to a due process standard but by the terms of the statute and regulations, creating the "property interest."

Plaintiff in *Arnett* was employed as a field representative for the Office of Economic Opportunity; he was removed from that position as a result of statements he made to the press accusing his superior of attempted bribery. Because he was a nonprobationary federal employe in the competitive service, plaintiff's discharge was governed by the "adverse action" procedures of the Lloyd-La Follette Act.[9] Plaintiff

---

Charges of inefficiency and insubordination founded upon an inability or refusal to complete assigned clerical tasks would not reasonably be expected either to impose a stigma upon the petitioner sufficient to damage his standing and association in the community or to foreclose his freedom to take advantage of other employment opportunities. *See* Hawkins v. School Dist. 14, 16 Or App 41, 517 P2d 330 (1973), Sup Ct *review denied* (1974).

[9] 5 USC § 7501 (1970):

"(a) An individual in the competitive service may be removed or suspended without pay only for such cause as will promote the efficiency of the service.

"(b) An individual in the competitive service whose removal or suspension without pay is sought is entitled to reasons in writing and to—

"(1) notice of the action sought and of any charges preferred against him;

"(2) a copy of the charges;

"(3) a reasonable time for filing a written answer to the charges, with affidavits; and

successfully sued for reinstatement with back pay in United States District Court on the ground that the Act and attendant regulations violated Fifth Amendment due process requirements in failing to provide for a trial-type hearing before an impartial agency official *prior* to removal.

As a statutorily tenured public employe, the plaintiff in *Arnett* apparently fell safely within the class of individuals entitled to claim procedural due process protections. On appeal a plurality of the Supreme Court concluded, however, that he did not in fact possess a property interest requiring such safeguards, Mr. Justice Rehnquist observing:

"* * * [Plaintiff] did have a statutory expectancy that he not be removed other than for 'such cause as will promote the efficiency of [the] service.' But the very section of the statute which

"(4) a written decision on the answer at the earliest practicable date.
"* * * * * *."

Both the Civil Service Commission and the Office of Economic Opportunity also followed regulations enlarging the procedural protections accorded by the Act itself. The Commission's regulations provided, inter alia, that the employing agency must give 30 days' advance written notice to the employe prior to removal, and make available to him the material on which the notice was based. 5 CFR 752.202(a) (1973). They also provided that the employe would have an opportunity to appear before the official vested with authority to make the removal decision in order to answer the charges against him (5 CFR 752.202(b) (1973)), that the employe must have received notice of an adverse decision on or before its effective date, and that the employe could appeal from an adverse decision. 5 CFR 752.202(f) (1973). This appeal could be either to a reviewing authority within the employing agency (5 CFR 771.205, 771.208 (1973)), or directly to the Commission (5 CFR 752.203 (1973)), with the employe being entitled to an evidentiary trial-type hearing at the appeal stage of the proceeding. 5 CFR 771.208, 771.210–771.212, 772.305(c) (1973). Finally, while the trial-type hearing could be held after the employe's actual removal, if an appeal was successful the employe received full back pay, less any amounts earned by him through other employment during that period. 5 USC § 5596 (1970).

granted him that right, a right which had previously existed only by virtue of administrative regulation, expressly provided also for the procedure by which 'cause' was to be determined, and expressly omitted the procedural guarantees which [plaintiff] insists are mandated by the Constitution. Only by bifurcating the very sentence of the Act of Congress which conferred upon [plaintiff] the right not to be removed save for cause could it be said that he had an expectancy of that substantive right without the procedural limitations which Congress attached to it * * *." 416 US at 151-52.

If Mr. Justice Rehnquist's opinion reflected the thinking of a majority of the court, it would, as suggested by the state, constitute a significant change in the court's approach to due process claims, for as Mr. Justice Marshall noted in his dissent:

"* * * Mr. Justice Rehnquist's argument that because [plaintiff's] entitlement arose from statute, it could be conditioned on a statutory limitation of procedural due process protections, [represents] an approach which would render such protection inapplicable to the deprivation of any statutory benefit —any 'privilege' extended by Government—where a statute prescribed a termination procedure, no matter how arbitrary or unfair. It would amount to nothing less than a return, albeit in somewhat different verbal garb, to the thoroughly discredited distinction between rights and privileges which once seemed to govern the applicability of procedural due process." (Footnote omitted.) 416 US at 211.

The fact is, however, that six Justices expressly rejected the rationale of the plurality in reasserting the view that a statute creating an expectation of job retention absent cause for removal confers upon an employe a property interest to which due process attaches. Although the six disagreed concerning the

content of the due process to be afforded,[4] they were unanimous in holding that the sufficiency of any specific procedures was to be determined by reference to a constitutional standard, adhering to the view that the form of due process required in each case is to be ascertained by balancing the individual's need for procedural safeguards against the governmental interest in summary or informal action.

As one commentator has noted:

"Reduced to their lowest common denominator, the separate opinions filed in *Kennedy* uphold the constitutionality of the existing adverse action procedure by a slender five-to-four margin, the lack of a uniform rationale among the opinions emphasizing the likelihood that *Kennedy* perhaps would not be followed were even a slightly different state government employee removal statute to be challenged * * *.

"* * * * *

"Contrasting the relative solidarity of the six Justices on the attachment issue with their lack of agreement on the results of the balancing process indicates that *Kennedy* will provide only weak authority for upholding other termination proce-

[4] After examining in detail the "adverse action procedure" (*see* n 3.) and balancing "the Government's interest in expeditious removal of an unsatisfactory employee * * *" against the interest of the affected employe in continued public employment, Mr. Justices Powell and Blackmun decided that the Act and attendant regulations complied with due process despite the inability of federal employes to demand a pretermination evidentiary hearing. While agreeing that an evidentiary hearing prior to termination would not be necessary where, as under the Act, and regulations, a full trial-type proceeding is provided on appeal, Mr. Justice White dissented because the plaintiff had not been given the opportunity to appear before an impartial official prior to his dismissal. Mr. Justices Marshall, Douglas, and Brennan dissented on the ground that due process required a full evidentiary hearing before an impartial decision-maker prior to the termination of employment.

dures that may work even a slight shift in the balance of conflicting interests * * *."⑤ While it may not be ignored, we believe that the absence of a majority and the obvious division among the members of the court diminish the value of *Arnett* as a precedent. More specifically, in light of the fact that the six Justices who found that plaintiff had acquired a property interest in his employment requiring procedural due process protection were evenly divided on the question of whether a full evidentiary hearing prior to the employe's removal was necessary in the context of the adverse action procedures of the Lloyd-La Follette Act, we do not view the case as diminishing in any way the effect of the court's prior opinions in *Board of Regents v. Roth,* supra, and *Perry v. Sindermann,* 408 US 593, 92 S Ct 2694, 33 L Ed 2d 570 (1972), which we have consistently interpreted as holding that

"* * * if rules enacted by public officials create a legitimate claim to job tenure, then the expectation of continued employment becomes a property interest within the meaning of the Due Process Clause of the Fourteenth Amendment, *any employment cannot be terminated without a pretermination hearing that complies with due process requirements.*" (Footnote omitted.) (Emphasis supplied.) *Gunsolley v. Bushby,* 19 Or App 884, 890-91, 529 P2d 950 (1974).

⑤ Comment, *Adverse Action Procedures,* 16 William and Mary L Rev 153, 167-68 (1974). For post-*Arnett* cases in which the rationale of Mr. Justice Rehnquist's plurality opinion has been either implicitly or explicitly rejected by courts applying a due process balancing test *see* Rolles v. Civil Service Commission, 512 F2d 1319 (DC Cir 1975); Peacock v. Board of Regents of Univ. & St. Col. of Ariz., 510 F2d 1324 (9th Cir 1975); Geneva Towers Tenants Org. v. Federated Mortgage Inv., 504 F2d 483 (9th Cir 1974); and Ring v. Schlesinger, 502 F2d 479, 487 (DC Cir 1974) (note especially Judge Robb's dissent at 502 F2d 492). *Compare* Davis v. Vandiver, 494 F2d 830 (5th Cir 1974).

In the course of upholding the due process rights of public

*See Schlichting v. Bergstrom,* 13 Or App 562, 511 P2d 846 (1973) ; *Papadopoulos v. Bd. of Higher Ed.,* supra.

◼ As noted above, no "hearing" of any kind preceded petitioner's dismissal on August 2, 1974. On December 5, 1974, some four months later, petitioner (with the assistance of counsel) was, however, provided with an opportunity to present evidence, confront and cross-examine witnesses, and submit arguments based upon the record in a hearing presided over by PERB's examiner.[®] It is petitioner's contention that because the review exercised by PERB is less than "de novo" its decision—based upon evidence introduced at an otherwise constitutionally adequate hearing—does not amount to a decision by an "impartial decision-maker" and fails, therefore, to provide the due process previously lacking.

While holding that PERB's authority does not, in fact, permit it to substitute its own judgment for that of the appointing authority with respect to determining a reasonable sanction to be imposed in each case, we have—in the course of outlining PERB's scope of review in general—pointed out that

"* * * if the Board—*through its own evidentiary hearing*—*has found facts which support the charges of the employer,* it may *only* modify the disciplinary action taken if it can also find that no reasonable employer would have regarded those facts as sufficient cause for the action * * *.

---

school children threatened with suspension a majority of the court recently noted that "a state employee who under state law, or rules promulgated by state officials, has a legitimate claim of entitlement to continued employment absent sufficient cause for discharge may demand the procedural protections of due process * * *." Goss v. Lopez, 419 US 565, 573, 95 S Ct 729, 42 L Ed 2d 725 (1975), citing both Mr. Justice Powell's and Mr. Justice White's opinions in Arnett v. Kennedy, 416 US 134, 94 S Ct 633, 40 L Ed 2d 15 (1974).

[®] ORS 240.560(2), 183.415.

"* * * In order to modify or reverse an agency order dismissing or suspending an employe, the Board must—in those cases where 'good faith' is not an issue—find that the action is arbitrary either *because the employer has failed to establish facts to support the charges upon which the action is based* or because though the charges are supported they constitute no 'cause' upon which a reasonable employer would base the action taken.

"* * * [O]ur interpretation does not reduce the Board to a 'rubber stamp' with reference to agency action. *Employers remain obligated to establish in a hearing before the Board or its agents following reasonable notice facts that support the charges upon which they base their disciplinary actions * * *."* (Emphasis supplied.) *Thompson v. Secretary of State,* 19 Or App 74, 80-81, 526 P2d 621, Sup Ct *review denied* (1974).

For purposes of determining whether disciplinary action—whatever its form—is based upon charges supported by facts, PERB is, therefore, the impartial and independent decision-maker required by due process. No weight is given to the agency's own findings of fact; the burden of establishing a historical basis for *any* disciplinary action is specifically imposed upon the appointing authority. Due process requires no more. Protection of the individual against governmental arbitrariness does not require that the discretion to choose an appropriate and reasonable sanction be withheld from individual state agencies; the interest of employes in such an allocation of responsibilities is outweighed by the governmental interest in maintaining efficient agency administration.

While petitioner was, therefore, dismissed without due process[7] on August 2, 1974, the constitutional

---

[7] From a practical viewpoint it can be argued that the repeated encouragements, conferences, demands, warnings, etc.,

requirements were ultimately complied with on December 5, 1974 when, pursuant to ORS 240.560, a hearing was conducted by PERB.

Thus, although petitioner seeks reinstatement with back pay, such an award would not be appropriate in this case. As we noted in *Gunsolley v. Bushby*, supra, a wrongfully discharged public employe's "cause of action" may arise from one of five possible bases:

"* * * (1) a common law breach of contract action; (2) a claim that the discharge was in violation of the substantive standards for discharge stated in an applicable statute or regulation; (3) a claim that the discharge was accomplished in a manner in violation of the procedural requirements of an applicable statute or regulation; (4) a claim that the discharge was, substantively, for a constitutionally impermissible reason; and (5) *a claim that the discharge was, procedurally, accomplished in a constitutionally impermissible manner.* The first possible cause of action * * * triggers well-settled damages rules * * *. The appropriate remedy in the second and fourth situations will ordinarily be reinstatement.

"*When the claim made and established is that the procedural requirements of law or, as here, the constitution, were violated for a period of time, in general we believe the appropriate measure of damages to be awarded a public employe is solely the employe's lost wages and other benefits during the period of noncompliance * * *.*" (Emphasis supplied.) 19 Or App at 895-96.

Petitioner's relief in this case is, therefore, limited to an award of his "lost wages and other benefits" between August 2, 1974 and December 5, 1974. The

that were afforded petitioner might be a substitute for the due process petitioner claims. The simple answer is that higher authority has not so defined it, and we are bound by that authority.

legislative grant of authority to PERB would not appear to permit it to make such an award.[9] Petitioner may pursue other remedies.

Affirmed.

---

[9]
  "(3) If the board finds that the action complained of was taken by the appointing authority for any political, religious or racial reasons, or was an unlawful employment practice as described in subsection (1) of ORS 659.026, the employe shall be reinstated to his position and shall not suffer any loss in pay.

  "(4) In all other cases, if the board finds that the action was not taken in good faith for cause, it shall order the immediate reinstatement and the reemployment of the employe in his position without the loss of pay. The board in lieu of affirming the action, may modify it by directing a suspension without pay for a given period, and a subsequent restoration to duty, or a demotion in classification, grade or pay * * *." ORS 240.560(3) and (4).