Argued June 7, reversed and remanded November 18, 1976, petition for rehearing denied January 11, 1977

## TUPPER, *Respondent—Cross-Petitioner,*
### *v.*
## FAIRVIEW HOSPITAL AND TRAINING CENTER et al, *Petitioners.*

556 P2d 1340

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for petitioners. Also on the briefs were Lee Johnson, Attorney General, Salem, and John W. Burgess, Assistant Attorney General, Salem.

*Henry H. Drummonds* of Kulongoski, Heid, Durham & Drummonds, Eugene, argued the cause and filed briefs for respondent/cross-petitioner.

HOWELL, J.

## HOWELL, J.

This case is before us on review from a decision of the Court of Appeals, 22 Or App 523, 540 P2d 401 (1975), which upheld the action of the Public Employe Relations Board (PERB) in affirming Tupper's dismissal from public employment by Fairview Hospital and Training Center. The Court of Appeals held that the hospital's pretermination proceedings were constitutionally inadequate, but affirmed Tupper's dismissal on the basis of the post-termination hearing conducted by PERB. The Court of Appeals also held that Tupper was entitled to an award of "lost wages and other benefits" for the time between his dismissal and the post-termination hearing, but refused to grant that relief in this proceeding on the grounds that PERB lacked the legislative authority to make such an award. Both Tupper and Fairview Hospital petitioned this court for review of that decision. We granted these petitions, as well as those in the companion case, *Hammer v. Oregon State Penitentiary,* 23 Or App 743, 543 P2d 1094 (1975), in order to consider what types of pretermination and post-termination procedures are constitutionally required when a public agency seeks to dismiss a classified employee.

Prior to his dismissal, Tupper had been employed for approximately six years at Fairview Hospital, a state institution for the mentally deficient which is operated by the Mental Health Division of the Department of Human Resources. As a psychiatric aide, Tupper's duties included the supervision and training of the "residents" living in one of several small, dormitory-like "cottages." His responsibilities included preparing and maintaining a "program book" in which the progress made by his residents in various training programs was recorded. The record indicates that these program records were essential to the successful operation and continued funding of these programs.

[ 659 ]

On April 22, 1974, Tupper's supervisor discovered that Tupper had lost his program book. Tupper agreed to reassemble these records by May 1. When Tupper failed to complete the work by this deadline, he was given until the 24th of May to finish. However, no further progress was made by that date. After four more weeks of remonstrating, Tupper's supervisor sent him a written warning informing him that if the work was not completed by July 10, "this will be considered insubordination and disciplinary action will follow."

When July 10 arrived, Tupper had made additional progress, but some of the records still remained incomplete. On July 15, Tupper was suspended for the day and presented with another memo advising him that "further disciplinary measures" would be taken unless the records were completed by the following day. On July 17, more progress had been made, but the work remained unfinished. Tupper was again suspended for the day and ordered to complete the job by the 18th. However, Tupper's program book remained unchanged on the 18th.

On July 23, 1974, after reviewing Tupper's situation with his supervisors, the director of the psychiatric aide staff recommended a dismissal. The following day, without first notifying Tupper of the contemplated dismissal and affording him an opportunity to be heard, the superintendent of Fairview suspended Tupper without pay and dismissed him effective August 2, 1974. A letter was then sent to Tupper informing him of this action and detailing the facts relied upon in support of the dismissal.

After his dismissal, Tupper sought a hearing before PERB. The hearing was conducted on December 5, 1974, before a hearings examiner. On January 14, 1975, the hearings examiner issued his "Proposed Findings of Fact, Conclusion of Law, and Order," which recommended affirming Tupper's dismissal. Tupper then filed his objections to the proposed order,

and, on March 21, 1975, the board issued a final order which essentially adopted the proposals of the hearings examiner and upheld the dismissal.

Tupper then sought judicial review of this order in the Court of Appeals. While the Court of Appeals concluded that the hospital violated Tupper's rights to procedural due process by failing to notify him of his proposed dismissal and offering him an opportunity to be heard, the court also determined that the subsequent PERB hearing supplied the due process previously lacking and held that Tupper was entitled only to an award of back wages for the period between the date of his dismissal and the date of the hearing.

In its petition for review of that decision, Fairview contends that a pretermination hearing is not constitutionally required in every case and that the post-termination hearing conducted by PERB, together with the repeated encouragements, conferences, demands, warnings, etc., was sufficient to satisfy due process requirements in the present situation. Tupper's petition essentially takes the position that the Court of Appeals was correct in deciding that the hospital violated his due process rights by dismissing him without notice and without an opportunity to be heard, but he contends that the subsequent PERB hearing was not sufficient to remedy this violation. He argues that the PERB hearing is not a de novo proceeding and that a review hearing which accords weight to a procedurally defective initial decision merely perpetuates the original denial of due process. Tupper also argues that even if the Court of Appeals correctly decided that the post-termination hearing was constitutionally adequate, he is then entitled to an award of back pay not merely from August 2, 1974 to December 5, 1974, the date of the hearing, but to March 21, 1975, the date of the board's final decision. Because of our disposition of this case, we will discuss only the first two of these issues.

The fourteenth amendment to the United States

Constitution imposes procedural due process constraints on governmental actions which deprive individuals of significant liberty or property interests. Fairview does not dispute the fact that Tupper had a constitutionally significant "property interest" in his continued employment, and we find that he clearly did. *See* ORS 240.560; *Papadopoulos v. Bd. of Higher Ed.,* 14 Or App 130, 511 P2d 854, S Ct *rev. denied* (1973), *cert. denied* 417 US 919 (1974). *See also Arnett v. Kennedy,* 416 US 134, 94 S Ct 1633, 40 L Ed 2d 15 (1974); *Perry v. Sindermann,* 408 US 593, 92 S Ct 2694, 33 L Ed 2d 570 (1972); *Board of Regents v. Roth,* 408 US 564, 92 S Ct 2701, 33 L Ed 2d 548 (1972). *Compare Bishop v. Wood,* 426 US 341, 96 S Ct 2074, 48 L Ed2d 684 (1976).

■   Governmental deprivation of such a property interest must be accompanied by at least minimal procedural protections including some form of notice of the contemplated action and some sort of opportunity to be heard if that action is contested. *Arnett v. Kennedy, supra. See also Mathews v. Eldridge,* 424 US 319, 96 S Ct 893, 47 L Ed 2d 18 (1976); *Wolff v. McDonnell,* 418 US 539, 94 S Ct 2963, 41 L Ed 2d 935 (1974). The particular form of the notice and hearing required, however, will vary from case to case depending upon the particular circumstances and interests involved. *Mathews v. Eldridge, supra; Morrissey v. Brewer,* 408 US 471, 92 S Ct 2593, 33 L Ed 2d 484 (1972); *Cafeteria & Restaurant Workers Local 473 v. McElroy,* 367 US 886, 81 S Ct 1743, 6 L Ed 2d 1230 (1961).

■   In this case, the dispute centers upon what process is due prior to the initial dismissal and pending subsequent review. The determination of this issue requires an analysis of several factors. As most recently stated by the United States Supreme Court:

> "* * * identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous

deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge,* supra 96 S Ct at 903.

*See also* Friendly, *Some Kind of Hearing,* 123 U Pa L Rev 1267, 1278 (1975).

■ The factors which must be weighed in this case are similar to those considered by the United States Supreme Court in *Arnett v. Kennedy, supra.* In *Arnett* the court sustained the validity of the federal pretermination procedures for dismissing an employee for cause. These procedures included notice of the action contemplated, a copy of the charge, reasonable time for filing a written response and supporting affidavits, and an opportunity for an oral appearance upon request. Then, following the dismissal, a full evidentiary hearing was provided. In upholding this procedural scheme, Justice Powell balanced the interest of the individual employee in continued public employment pending an evidentiary hearing against the government's interest in the expeditious removal of an unsatisfactory employee.[1] Powell noted that the procedures in *Arnett* "minimize[d] the risk of error in the initial removal decision and provide[d] for compensation for the affected employee should that decision eventually prove wrongful." 416 US at 170. He then concluded that a full evidentiary hearing need not be provided prior to the employee's dismissal and that the

---

[1]Several separate opinions were filed in *Arnett,* none of which commanded the support of a majority of the court at the time. However, both the United States Supreme Court and the lower federal courts have since been following the reasoning of the opinion written by Justice Powell in that case, and we have determined to do so as well. *See, e.g., Mathews v. Eldridge,* 424 US 319, 96 S Ct 893, 47 L Ed 2d 18 (1976); *Boehning v. Indiana State Emp. Ass'n, Inc.,* 423 US 6, 96 S Ct 168, 46 L Ed 2d 148 (1975); *Goss v. Lopez,* 419 US 565, 95 S Ct 729, 42 L Ed 2d 725 (1975); *Frost v. Weinberger,* 515 F2d 57 (2d Cir 1975); *Rolles v. Civil Ser. Comm.,* 512 F2d 1319 (DC Cir 1975); *Eley v. Morris,* 390 F Supp 913 (ND Ga 1975); *Young v. Hutchins,* 383 F Supp 1167 (MD Fla 1974).

procedures employed in *Arnett* provided "a reasonable accommodation of the competing interests." *Id.* at 171.[2]

The corresponding interests of the employee and the government in this case are similar to those in *Arnett.* The scope of the post-termination hearings is also similar. However, in contrast to the rather extensive pretermination procedures existing in *Arnett,* under the termination system utilized in this case virtually no procedural safeguards were employed prior to the actual dismissal. Although Tupper was repeatedly counseled and warned that "further disciplinary measures" might be taken, he apparently was never notified that termination was being considered and was never given an opportunity to defend himself before the officials who decided that he should be dismissed. Due to the absence of these important procedural safeguards, the risk of an erroneous deprivation of the employee's interest in continued employment pending a full evidentiary hearing was substantially greater in this case than it was in *Arnett.*

Moreover, even the relatively extensive pretermination procedures involved in the *Arnett* decision were found to be constitutionally adequate by only a fairly

---

[2] The concurring opinion in this case apparently acknowledges that the due process clause of the federal constitution, as interpreted by the United States Supreme Court in *Arnett,* does not require a full-scale evidentiary hearing prior to the dismissal of a classified employee. However, that opinion then takes the position that the "due course of law" provision in Article 1, § 10, of the Oregon Constitution should be interpreted to require a full pretermination hearing in such cases. This issue was never raised, briefed or argued by the parties in this case. Moreover, as demonstrated by the cases cited in footnote four of the concurring opinion, the procedural effect of state "due course of law" constitutional provisions is essentially the same as the procedural effect of the due process clause of the fourteenth amendment to the federal constitution. Therefore, in the absence of some compelling public interest in giving Art 1, § 10, of our constitution a broader interpretation in this situation than that given to the due process clause of the fourteenth amendment by the federal courts, we decline to adopt such a construction. *Compare State v. Childs,* 252 Or 91, 99, 447 P2d 304 (1968) *with Deras v. Meyers,* 272 Or 47, 64 n.17, 535 P2d 541 (1975). *See also Olsen v. State of Oregon,* 276 Or 9, 554 P2d 139 (1976); *Plummer v. Donald M. Drake Co.,* 212 Or 430, 320 P2d 245 (1958).

[ 664 ]

narrow margin.[3] Therefore, on the basis of *Arnett v. Kennedy, supra,* and in view of the competing interests involved in these cases, we conclude that in addition to his full post-termination hearing Tupper was entitled to the following procedural safeguards prior to his dismissal. First, he should have been notified of the charges against him. Second, he should have been informed of the kinds of sanctions being considered. Third, he should have been given at least an informal opportunity to refute the charges either orally or in writing before someone who was authorized either to make the final decision or to recommend what final decision should be made.[4]

■ Since none of these safeguards were provided, we find that the procedures employed did not comply with the due process clause of the fourteenth amendment and that Tupper's dismissal on August 2, 1974, was invalid. Because his dismissal was invalid, we conclude that Tupper is entitled to an award of back wages and other benefits and that he should continue to receive these amounts until he has been properly terminated.[5] In determining these amounts, the Board should offset any compensation and other benefits Tupper has received since his original termination.

Reversed and remanded to the Court of Appeals

[3] Four of the nine Justices dissented, at least in part. Marshall, Douglas and Brennan dissented on the grounds that a full evidentiary hearing was required prior to the dismissal. White concurred in part and dissented in part on the grounds that the pretermination procedures involved in that case were adequate only if an impartial hearings officer made the termination decision.

[4] In the interest of avoiding unnecessary controversy, we feel that whenever possible the employee should receive written notice of the charges, of the proposed sanction, and of his right to an informal hearing.

[5] The Court of Appeals seems to have concluded that PERB lacked the necessary authority to order an award of back wages upon a finding that the termination was procedurally invalid. Although there is apparently nothing in the authorizing statute which gives PERB the authority to issue such an order on its own, *see* ORS 240.560, the constitutional nature of the deprivation involved is enough to require this court to direct that such an award be made. Moreover, ORS 240.563 and 183.482 specifically authorize the reviewing court to reverse or remand the agency's order if it finds "[t]he statute, rule or order to be unconstitutional." ORS 183.482(8)(b).

with directions to order the Public Employe Relations Board to issue an order awarding back wages and other benefits until such time as a valid termination has occurred.

**O'CONNELL, J.,** specially concurring.

The pivotal question raised by the state's petition for review and Tupper's cross-petition for review is the validity of the procedures for termination under ORS 240.555, 240.560 and Personnel Rule 81-100, tested by the constitutional requirements of due process. More specifically, the question is whether a pre-termination hearing is required to satisfy due process requirements.[1] Both this case and the companion case, *Hammer v. Oregon State Penitentiary,* decided this day, were briefed and argued solely with reference to the due process clause of the Fourteenth Amendment. Within the framework it seems probable from *Arnett v. Kennedy,* 416 US 134, 94 S Ct 1633, 40 L Ed2d 15 (1974), that a post-termination hearing is sufficient to satisfy the federal requirement of due process, at least if certain safeguards such as notice of the charges and an opportunity to respond precede the dismissal. Neither the petitioner nor respondent have sought to determine whether the Oregon Constitution goes beyond this interpretation of the federal constitution, guaranteeing a greater protection in a procedural way to an employee with entitlement. It is important that this inquiry be made because if there is an applicable provision in our constitution which can be construed as requiring a pre-termination hearing, any discussion of the Fourteenth Amendment and its interpretation in the *Arnett* case is, of course, irrelevant.[2]

Since the applicability of the Oregon Constitution

---

[1] Although the constitutional question might have been avoided by interpreting ORS 240.555 and 240.560 as requiring a pre-termination hearing, Personnel Rule 81-100, adopted pursuant to the authority vested in the Public Employe Relations Board under ORS 240.555(1) to establish termination procedures, provides for a post-termination hearing.

[2] *See,* Linde, *Without "Due Process,"* 49 Or L Rev 125, 133 (1970).

was not raised by counsel, the preliminary question is whether this court can raise it sua sponte. This is not the situation, frequently presented, where a constitutional question is not raised at the trial stage and is raised for the first time by counsel on appeal. In the present case it is assumed that a constitutional question of procedural due process under the federal constitution is properly presented; the question is whether this court should, on its own motion, consider the related question of the applicability of Art. I, § 10 of the Oregon Constitution. Since the matter is of substantial public concern, it is our duty to consider it.[3]

Art. I, § 10 provides:

> "No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

It has been strongly argued by Professor Hans Linde that the guarantees in Art. I, § 10 are not the precise equivalents of the guarantees found in the Fourteenth Amendment.[4] Assuming, without deciding, that this is

---

[3] Inasmuch as the right to a pre-termination hearing is the principal question involved and since this question of the timing of the hearing would involve a similar policy analysis under both the federal and state constitutions (assuming the latter is applicable), there would be no reason to call for supplemental briefs.

[4] Linde, *Without "Due Process,"* 49 Or L Rev 125 (1970). Professor Linde interprets Art. I, § 10 as a "remedies clause" merely guaranteeing a legal remedy for private wrongs derived from Chapter 40 of the Magna Carta ("To no one will we sell, to no one will we deny, or delay right or justice"), and is not a "due process" clause providing guarantees against official deprivations "except by the law of the land"—clauses derived from Chapter 39 of the Magna Carta ("NO free man shall be taken or imprisoned or dispossessed, or outlawed, or banished, or in any way destroyed, nor will we go upon him, nor send upon him, except by the legal judgment of his peers or by the law of the land"). When the Magna Carta was re-issued under Henry III, the two clauses were combined under Chapter 29, which eventually was enacted as a statute by Parliament in 1797. Art. I, § 10 and its predecessors say more than Chapter 40 does, and it is possible that the constitutional draftsmen intended to embody the two ideas expressed in Chapter 29 of Magna Carta. In any event, in the states which have provisions similar to Art. I, § 10 the courts, including this court, have

so, it seems clear that the two constitutional provisions are the same insofar as each would prohibit the deprivation of the interests specified in the respective provisions of the federal and Oregon constitutions without fair procedures generally associated with the term "due process."

In the present case the interest of Tupper is denominated an "entitlement." Comparable interests of public employees have been classified as "property" interests.[5] The inquiry is, therefore, whether the guarantee of Art. I, § 10, of the Oregon Constitution, which prohibits injury to person, property or reputation without due course of law, and guarantees the complete administration of justice, is satisfied by anything short of a pre-termination hearing. In addi-

---

regarded the provisions as the equivalent of the due process clause of the Fourteenth Amendment. *See,* (interpreting Indiana Constitution, Art. I, § 12) *Hale v. State,* 248 Ind 630, 230 NE2d 432, 435 (1967); *Sweet v. State,* 233 Ind 160, 117 NE2d 745, 746-47 (1954); *Hamm v. Review Board of the Indiana Employment Security Div.,* 132 Ind App 318, 177 NE2d 337, 338 (1961); *Freeman v. Pierce,* 179 Ind 445, 101 NE 478, 479 (1913), and (interpreting Ohio Constitution, Art. I, § 16) *Ex Parte Martin,* 139 Ohio St 609, 41 NE2d 702, 706 (1942); *State ex rel Smilack v. Bushong,* 159 Ohio St 259, 111 NE2d 918, 922 (1953), and (Oregon) *State v. Bouse,* 199 Or 676, 686, 264 P2d 800 (1953). *Cf., School Dist. No. 7 v. Weissenfluh,* 236 Or 165, 173, 387 P2d 567 (1963) and *Columbus Packing Co. v. State,* 106 Ohio St 469, 140 NE 376, 378 (1922).

Even if Art. I, § 10 is interpreted as not including a substantive due process provision, it does require procedural due process in the sense of requiring a remedy for injuries to person, property or reputation. If an entitlement is "property", the employee is entitled to a "remedy by due course of law" to retain it. That remedy must be provided by the state. It is for us to say whether it is a remedy "by due course of law" if the employee is given a hearing only after he has been discharged.

[5] *See, e.g., Arnett v. Kennedy,* 416 US 134, 94 S Ct 1633, 40 L Ed2d 15 (1974) (the separate opinions reveal a consensus that such an "entitlement" is a property interest); *Perry v. Sindermann,* 408 US 593, 92 S Ct 2694, 33 L Ed2d 570 (1972); *Comment,* 10 Harv Civil Rights L Rev 472, 473 (1975). *Cf.,* Reich, *The New Property,* 73 Yale L J 733 (1964).

The recent cases of *Mitchell v. W. T. Grant Co.,* 416 US 600, 94 S Ct 1895, 40 L Ed2d 406 (1974) and *North Georgia Finishing v. Di-Chem.,* 419 US 601, 95 S Ct 719, 42 L Ed2d 751 (1975) have created uncertainty in this area. *See* opinions of Stewart, J. in *Mitchell* and *North Georgia Finishing.* Regardless of the direction finally taken by the U. S. Supreme Court, I believe that plaintiff in the present case has a property interest protected by the justice and remedies clause of the Oregon Constitution.

tion to being a "property" interest, job tenure is also a "reputation" interest. The stigma which an employee suffers upon being discharged from his job, even if only temporarily, can be regarded as an injury to his "reputation," thus qualifying as a protected interest under Art. I, § 10.[6]

Beginning, then, with the recognition of a constitutionally protected interest in the petitioner, the court is faced with the question posed above—is a pretermination hearing necessary to meet the minimum standards of due process? In answering this question, it must be recognized that the procedural requisites for a due process hearing vary depending upon the importance of the interests involved. On one hand are the interests of the government in expeditiously removing an unsatisfactory employee; on the other hand are the interests of the employee in retaining his job. In the *Arnett* case Justice Powell, in a specially concurring opinion, concluded that the interest of the government as employer outweighed the interest of the employee in balancing the need for a pre-termination hearing. He stated:

> "* * * Prolonged retention of a disruptive or otherwise unsatisfactory employee can adversely affect discipline and morale in the work place, foster disharmony, and ultimately impair the efficiency of an office or agency."

He added that

> "* * * [A] requirement of a prior evidentiary hearing would impose additional administrative costs, create delay, and deter warranted discharges." 40 L Ed2d at 41.

---

[6] Discharge from a government job often seriously injures the employee's business and professional reputation. There is a widely held impression that it is difficult to fire government workers, and this contributes to the belief that anyone fired by the government is probably unemployable. *See,* Merrill, *Procedures for Adverse Actions Against Federal Employees,* 59 Va L Rev 196, 204 (1973); and *Due Process and Public Employment in Perspective: Arbitrary Dismissals of non-Civil Service Employees,* 19 UCLA L Rev 1052, 1065 (1972). Discharge from a job often damages the employee's personal reputation, too, since status in our society is so closely related to an individual's source of livelihood. *See,* Reich, *The New Property, supra* note 5.

It is difficult to understand how Mr. Justice Powell could have recited the foregoing as the reasons for his conclusion in the face of the very thorough study of Professor Merrill marshalling facts which point to a contrary conclusion.[7] As to "additional administrative costs," "delay" and the alleged deterrence of warranted discharges, Merrill points out that "The data * * * show that in 1970 agencies that provided hearings in advance generally processed cases faster than those that made a hearing available only on appeal." He adds that "available data clearly do *not* show that conducting the hearing afterwards helps shorten the process."

The contention that the retention of an unsatisfactory employee pending a hearing might be disruptive loses most of its force when it is revealed that the law and regulations existing at the time *Arnett* was decided required that an employee be given at least thirty days' notice of a proposed adverse action so that, as pointed out by Merrill, "agency personnel even now must function for at least a month with the threatened employee in their midst."[8] There is no reason to assume that a hearing could not be scheduled and held within that thirty-day period.[9] There are other data and factors which could be recited to prove that it is not necessary in the interest of office efficiency to postpone the termination hearing.[10] In fact, a pre-termination hearing should *enhance* efficiency by giving the agency an incentive to expedite disposition

---

[7]The substance of the report is contained in an article entitled *Procedures for Adverse Actions Against Federal Employees, supra* note 6. On the basis of Merrill's report, the Administrative Conference of the United States strongly recommended that evidentiary hearings be held prior to discharge.

[8]Merrill, *supra* 59 Va L Rev at 241.

[9]"[T]here seems little reason why a hearing could not be held during that 30-day period." Marshall, J., dissenting, 416 US at 225.

[10]*E.g., see* Marshall, J.'s dissent in *Arnett;* Merrill, *supra* 59 Va L Rev 196 at 238-246; *Fear of Firing: Arnett v. Kennedy and the Protection of Federal Career Employees,* 10 Harv Civil Rights L Rev 472 (1975).

of the matter, allowing it to get on with its primary functions. [11]

The conclusion is, then, that the government as employer has no interests which outweigh those of the employee calling for the postponement of the hearing until after termination has been effected. There being no identifiable governmental interests deserving special protection, the hearing requirements necessary to satisfy due process are the same in preserving the interests of an employee whose job is threatened as they are where an owner's property is sought to be taken or where a person's liberty is at stake.[12]

I am satisfied that due process requires a prior hearing before *property* can be taken.[13] On the same facts, I would regard Art. I, § 10 as requiring the same pre-taking procedure. Since I regard an entitlement as a species of property within the meaning of Art. I, § 10, an employee having such an interest is entitled to have a hearing before that interest is taken from him.

---

[11] *See,* 59 Va L Rev at 245.

[12] Cf., *Fuentes v. Shevin,* 407 US 67, 92 S Ct 1983, 32 L Ed2d 556 (1972), where it was held that due process requires a prior hearing before property can be taken through the use of state law replevin procedures to repossess chattels; and *Morrissey v. Brewer,* 408 US 471, 92 S Ct 2593, 33 L Ed2d 484 (1972), where it was held that due process requires a prior hearing before a person can be deprived of liberty through state parole revocation.

[13] *See, Fuentes v. Shevin,* 407 US 67, *supra* note 12; *Sniadach v. Family Finance Corp.,* 395 US 337, 89 S Ct 1820, 23 L Ed2d 349 (1969).