Argued March 22, reversed and remanded June 25, 1979

ST. CLAIR, *Appellant,*
*v.*
CLARK, et al, *Respondent.*
(No. A 76-12-18116, CA 9235)
596 P2d 615

William C. Cox, Portland, argued the cause for appellant. With him on the brief was Des Connall, P.C., Portland.

Jack D. Hoffman, Deputy County Counsel, Portland, argued the cause for respondent. With him on the brief was John B. Leahy, County Counsel for Multnomah County, Portland.

John R. Barker, Portland, filed a brief amicus curiae for appellant. With him on the brief was Jones, Lang, Klein, Wolf & Smith, Portland.

Before Thornton, Presiding Judge, and Gillette and Campbell, Judges.

GILLETTE, J.

**GILLETTE, J.**

Petitioner seeks review of a circuit court order denying his petition for an alternative writ of mandamus. In his petition he alleged that he had been dismissed from his position as an employe of Multnomah County without the requisite due process. We agree and reverse.

The merits of the grounds for discharge are not at issue in this case. The trial court made the following findings concerning the events leading up to petitioner's dismissal: Petitioner had been working for the county as business manager for Rocky Butte Jail since December, 1973. Because of dissatisfaction with his job performance, petitioner was under close scrutiny by his supervisors—Carl Mason, Administrator of the Multnomah County Corrections Division, and Connie Mattingly, Mason's assistant—for the 7-to 8-month period preceding his discharge. Mason informed petitioner by a letter dated March 10, 1976, that, if petitioner's performance did not improve, he would face the possibility of dismissal. On September 30, 1976, Mattingly attempted to conduct a surprise cash count in petitioner's office but discontinued the count allegedly because of the "chaos" in petitioner's office. When petitioner came to work the next morning, he found his office locked. He was told to report to Mason's office on Monday, October 4, 1976. On Monday, petitioner met briefly with Mason, then with Mason and Mattingly. Mason attempted to explain certain charges against petitioner. The charges were never fully articulated, however, because the conversation became heated and ended with Mason's giving petitioner the choice of resigning or of being fired. Petitioner then met with Lee Brown, the Director of the Justice Services Department of Multnomah County. Brown had not been briefed on the matter and so did nothing but listen to petitioner. Several days later petitioner informed Mason that he would not resign and, on October 15, petitioner received a letter of termination effective October 29, 1976.

[811]

The parties urge that this case raises the question of whether the procedural due process requirements established by the Oregon Supreme Court in *Tupper v. Fairview Hospital,* 276 Or 657, 556 P2d 1340 (1976) *(Tupper II), reversing* 22 Or App 523, 540 P2d 401 (1975) *(Tupper I),* and *Hammer v. OSP,* 283 Or 369, 583 P2d 1136 (1978), apply retroactively to the dismissal of a classified employe by a public agency occurring prior to the date of those decisions. *Tupper II* was decided after October 29, 1976, the effective date of petitioner's discharge. The trial court found that the procedure followed was insufficient to comply with *Tupper II,* but declined to apply that case retroactively. We find it unnecessary to answer the question of the retroactivity of *Tupper II* because, as explained below, the procedures followed here were insufficient to comply with *Tupper I.*

At the time of petitioner's discharge, petitioner's employers were operating under the guidelines of County Ordinance 89 (now Multnomah County Code 3.10.300).[1] Simply put, Ordinance 89 required that employes being discharged be given a written notice of the county's intent to discharge, a 15-day suspension period without pay, and notice of the employe's right to appeal the discharge through a post-termination hearing. Ordinance 89 did not provide for a hearing of any

---

[1] 3.10.300 *Disciplinary Action*

"(A) Employes may, in good faith for cause, be subject to disciplinary action by suspension, written reprimand, demotion, reduction in pay or dismissal, provided, however, that such action shall take effect only after the appointing authority gives written notice of the action and its cause to the employe and the approppriate bargaining agent, if any.

"(B) In the case of dismissal, the employe will be under suspension without pay for 15 days prior to the effective date of dismissal.

"(C) Any regular employe who is reduced in pay, demoted, suspended or dismissed shall have the right to appeal the action directly to the council unless the employe elects, in writing, to appeal in accordance with the terms of the appropriate collective bargaining agreement. All appeals must be in writing and filed with the executive secretary not later than 10 days after the effective date of the disciplinary action."

kind prior to discharge. *(Tupper II* does require such a hearing.)

After he was discharged and instead of proceeding with the post-termination hearing provided for under Ordinance 89, petitioner, by way of an amended alternative writ of mandamus, sought to compel the county to restore him all employment rights, including back pay, until he was accorded the allegedly requisite procedural safeguards in the form of a pretermination hearing. The county demurred to petitioner's writ on the ground that petitioner had an adequate remedy at law —the post-termination hearing envisioned by Ordinance 89. That demurrer was overruled by the presiding court. The matter went to trial, and the trial court found for the county on the basis of non-retroactivity of *Tupper II.*

The county claims and the trial court found that our decision in *Tupper I* justified the county's reliance on *post*-termination hearings as adequate due process protection. We disagree. *Tupper I* held that the dismissal of a public employe without a pretermination hearing violated due process but that, in that case, the constitutional deficiency was cured by the subsequent post-dismissal hearing. 22 Or App at 535-36. It is only the latter portion of our holding that was rejected by the Supreme Court in *Tupper II.* Even under *Tupper I,* therefore, the county's failure to provide some sort of pretermination hearing is a failure to provide adequate due process protection.

As mandamus is the means by which a party may be compelled to accord to another party a clear legal right, under the factual posture in which this case was presented to the trial court, the petitioner was entitled to be given a pretermination hearing by the county. *Tupper I, supra.*

Respondent argues that petitioner was in fact accorded the requisite due process in that petitioner had been on notice for a 7- to 8-month period prior to

his dismissal that his performance was being monitored and that termination was a possible sanction. Respondent also argues that petitioner was given the opportunity to explain himself in the October 4 meeting with Brown. Respondent's argument fails, however, because of certain findings by the trial court. The trial court found that while petitioner had been notified by his supervisors of the contemplated sanction of termination, he had not been informed in advance of the precise charges which served as the basis for his discharge. The trial court also found that petitioner was never given a "meaningful opportunity to respond" to the charges in either the meeting with Brown or Mason. The court was correct. The meeting with Brown did not provide petitioner a valid opportunity to defend himself because neither Brown nor petitioner knew precisely the charges upon which the discharge was based. Petitioner's meeting with Mason was an equally inadequate opportunity to respond, owing to what the trial court styled as the "confusion surrounding that confrontation and the demonstrated personality clash between [petitioner] and Mattingly * * *." Based on these findings, which are supported in the record, the trial court correctly concluded that the county's failure to provide petitioner with some opportunity to respond to the complete statement of charges against him upon which his termination was based was a failure to provide the minimum standards of due process set out in *Tupper II.* As we have already indicated, it also failed to meet the requirements of *Tupper I.*

Reversed and remanded for proceedings consistent with this opinion.