Argued November 21, affirmed December 23, 1974

GUNSOLLEY, *Respondent, v.*
BUSHBY ET AL (No. 10-380), *Appellants.*

529 P2d 950

*Robert E. Nelson,* Portland, argued the cause for

appellants. With him on the brief were McCarty, Swindells & Nelson, Portland.

*Alex M. Byler,* Pendleton, argued the cause for respondent. With him on the brief were Corey, Byler & Rew, Pendleton.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

SCHWAB, C. J.

This is an action at law for money damages based on plaintiff's contention that the defendant hospital district failed to comply with constitutional requirements in terminating her employment. Plaintiff prevailed in a nonjury trial in circuit court, being awarded a judgment for $4,736 plus costs and disbursements. Defendants appeal.

Defendant Umatilla Hospital District No. 1 operates Umatilla Hospital.[1] As of March 22, 1972, plaintiff had been employed by the hospital district for over 13 years and was, on that date, dietary supervisor in charge of the hospital kitchen. On March 22 plaintiff was summoned to the office of the hospital administrator and informed that the Board of Directors of the hospital district had, at a meeting the prior evening, determined that she should be discharged. Plaintiff had received no notice of the Board meeting, was not present at the meeting, and therefore obviously had no opportunity to be heard by the Board before the decision was made to discharge her.

---

[1] The other defendants are the persons who comprised the Board of Directors of the hospital district and the hospital administrator on the date of plaintiff's discharge.

Plaintiff insisted that under written rules of the hospital district she was a "permanent employe" and thus, under the Due Process Clause of the Fourteenth Amendment, was entitled to an opportunity to be heard before she could be discharged. About six days after her March 22 discharge, plaintiff met informally with four of the five hospital district Board members to discuss her discharge. No witnesses were called during this informal meeting. Plaintiff, through counsel, continued to insist that she was entitled to a formal due process hearing on the grounds for her discharge. On December 23, 1972, the Board of Directors of the hospital district had a formal hearing regarding plaintiff's discharge. Both plaintiff and the district were represented by counsel, and testimony was offered by both parties and reported. The Board determined that there was good cause for plaintiff's dismissal.

Plaintiff then initiated this action for money damages, primarily lost salary, between the date of her discharge, March 22, and the date when she was finally accorded a formal hearing on the grounds for her discharge, December 23.

■ The initial problem is to determine what issues the defendants are attempting to raise on this appeal. What purport to be defendants' "assignments of error"[2] are not in the form required by Rule 6.18 of the rules of this court.[3] The Supreme Court has re-

---

[2] Defendants' "assignments of error" read:

"ASSIGNMENT OF ERROR NO. I.

"Was Plaintiff in fact a 'public employee' so as to grant jurisdiction of the Oregon Courts?"

"ASSIGNMENT OF ERROR NO. II.

"If Plaintiff was in fact a public employee, was Plaintiff

cently declined to consider "assignments of error" that are improper in form. *Pullen v. Calvert,* 270 Or 309, 527 P2d 398 (1974); *Elvalsons v. Industrial Covers, Inc.,* 269 Or 441, 525 P2d 105 (1974). We, of course, have the same authority under Rule 6.18 as does the Supreme Court. *State v. Johnson,* 19 Or App 355, 527 P2d 740 (1974). However, because of the potential importance of this kind of case, we will consider the merits of the issues seemingly raised by defendants.

■ Defendants' first contention seems to be that Umatilla Hospital District No. 1 is not a public or governmental employer and therefore plaintiff cannot be a public employe for purposes of constitutional requirements. The trial court's opinion concluded to the contrary:

"The Umatilla Hospital District is a municipal

---

a 'de facto tenured' employee with a property interest in continued employment that entitled Plaintiff to a pre-termination hearing?"

"ASSIGNMENT OF ERROR NO. III.

"Is Defendant entitled to further mitigation of damages than allowed by the Court?"

⑨ Rule 6.18 provides as follows:

"In appeals in actions at law, no alleged error of the trial court will be considered on appeal unless regularly assigned as error in the appellant's (or cross-appellant's) opening brief, except that the appellate court may take notice of errors of law apparent on the face of the record.

"Each assignment of error shall be clearly and succinctly stated under a separate and appropriate heading. The assignment of error must be specific and must set out verbatim the pertinent portions of the record. Assignments of error which the court can consider only by searching the record for the proceedings complained of will not be considered.

"The arrangement and working of assignments of error so far as applicable, together with reference to page of the transcript or narrative statement, shall conform to illustrations in Appendix D.

"\* \* \* \* \*."

corporation organized and existing under the provisions of ORS 441.195 et seq with the powers as set forth in ORS 441.320. Subparagraphs (5) and (7) of this latter section give the hospital district the power to appoint employees, staff and other personnel as well as the power to adopt, carry out and enforce rules and regulations with respect to nursing personnel, laboratory personnel, dieticians and other skilled personnel.

"* * * * *

"* * * The Umatilla Hospital District, which is partially financed by public taxation, serves an important public function and is sufficiently linked with the State for its acts to be subject to the limitations of the Fourteenth Amendment. * * *"

This being an action at law, we must affirm on this issue if this finding is supported by substantial evidence. In fact, it is supported by overwhelming evidence including, in addition to the factors cited by the trial court, the fact that the members of the Board of Directors of the hospital district are elected by the public. Defendants' contention that the hospital district is not a public employer is frivolous.

■■ Defendants next apparently contend that plaintiff had no property interest in continued employment that entitled her to a pretermination hearing.

The relevant authorities are: *Board of Regents v. Roth,* 408 US 564, 92 S Ct 2701, 33 L Ed 2d 548 (1972); *Perry v. Sindermann,* 408 US 593, 92 S Ct 2694, 92 S Ct 2717, 33 L Ed 2d 570 (1972); *Papadopoulos v. Bd. of Higher Ed.,* 14 Or App 130, 511 P2d 854, Sup Ct *review denied* (1973), *cert denied* 417 US 919 (1974); *Schlichting v. Bergstrom,* 13 Or App 562, 511 P2d 846 (1973); and *Hawkins v. School Dist. 14,* 16 Or App 41, 517 P2d 330 (1973), Sup Ct *review denied* (1974). These cases all hold that if rules

enacted by public officials create a legitimate claim to job tenure, then the expectation of continued employment becomes a property interest within the meaning of the Due Process Clause of the Fourteenth Amendment, and employment cannot be terminated without a pretermination hearing that complies with due process requirements.[4]

The relevant facts are: In 1968 or 1969 the Board of Directors of the hospital district duly adopted certain rules or guidelines governing the hospital and staff. Included therein was the following:

> "All personnel are employed through the Administration Office. Unless otherwise specified, employment is presumed to be full-time and permanent during satisfactory service.
>
> "*　*　*　*　*
>
> "There will be a probation period for all new employees of ninety (90) days."

After its approval by the Board, a copy of this document was placed in the pay envelope of every hospital employe, and thereby came to plaintiff's attention.

---

[4] Subsequent to its decisions in Board of Regents v. Roth, 408 US 564, 92 S Ct 2701, 33 L Ed 2d 548 (1972), and Perry v. Sindermann, 408 US 593, 92 S Ct 2694, 92 S Ct 2717, 33 L Ed 2d 570 (1972), the United States Supreme Court decided another case which may restrict *Roth* and *Sindermann* somewhat: Arnett v. Kennedy, 416 US 134, 94 S Ct 1633, 40 L Ed 2d 15 (1974). The discharge procedures before the court in that case guaranteed public employes advance written notice, an opportunity to respond in writing, and a pretermination opportunity to be informally heard. However, a trial-type hearing with testimony and cross-examination was not provided until after termination. Although unable to agree on a single opinion, a majority of the Supreme Court agreed that in some circumstances, such as the procedural system in question, it was constitutionally permissible to delay the trial-type hearing until after the discharge. We find none of those special circumstances in the present case.

We agree with the trial court's analysis of the legal effect of these rules:

> "The rules and regulations adopted by the Hospital were enacted pursuant to the delegation of authority contained in ORS 441.320 (5) and (7). Those rules disclose that upon first being employed, one is subject to a probationary period of ninety days. During that period he can be discharged at will. After that, if employed full time, he is considered to be a permanent employee so long as he performs satisfactorily. It is apparent that a distinction between probationary and permanent personnel is made in tenure status. Once having attained the state of a permanent employee a certain degree of job security is provided. Just cause must be shown for discharge. Under such circumstances an employee can be protected only if he is afforded a hearing and given a chance to refute charges made against him."

This interpretation of the rules is consistent with both plaintiff's testimony about her understanding of them and the testimony of the hospital administrator, one of the defendants herein, about his understanding of them.[9] It follows that plaintiff had a legitimate expectation of continued employment which was a property interest that could not be "taken" by state action

---

[9] The hospital administrator testified:

"Q  In other words, would it be accurate to say that before the probationary period was over that the probationary employee could be terminated for any reason at all or in fact for no reason?

"A  Yes.

"Q  But after having passed through the probationary period and achieving a status of a fulltime and permanent employee, there would have to be a reason for discharge?

"A  Yes."

without first affording an opportunity to be heard.[⊕]

The final and most significant questions presented by this case all relate to the proper measure of damages to be applied in a case like this. Plaintiff's complaint, as amended at trial to conform with the proof of lost wages, alleged:

> "As a direct and proximate result of the aforesaid acts of the defendants, and each of them, plaintiff has lost wages, has suffered mental anguish and has suffered in her ability to seek other employment of a like nature. Plaintiff's damages for loss of wages has been the sum of $5,121.00—$569.00 per month from March 22, 1972, [date of discharge] to December 23, 1972, [date of formal hearing]—and plaintiff's damages for mental suffering and loss of opportunity to seek similar employment has been the sum of $5,000.00."

Defendants first responded with a motion to make this allegation more definite and certain upon the grounds that it was

> "* * * so indefinite and uncertain that the precise nature or extent of the mental anguish or ability to seek other employment cannot be determined, nor the circumstances surrounding such

---

[⊕] Without segregating it as a separate "assignment of error," defendants contend that if plaintiff was entitled to a hearing, the hearing held about six days after her discharge fulfilled "all of the requirements of procedural due process." The trial court's opinion, with which we again agree, effectively refutes this claim:

> "* * * The informal meeting of the Board called at the request of the plaintiff * * * did not meet the standards of due process. No formal charges were furnished to the plaintiff nor were any witnesses called to substantiate claims of unsatisfactory service made against her. No minutes of the meeting were kept. As stated by Ervin Bushby, one of the Directors present at the meeting, the purpose of the meeting was solely to advise her as to why the discharge had been effected, and not called to reconsider anew whether or not there was just cause for the action which had been taken."

claimed mental anguish or ability to seek other employment, nor has Plaintiff set forth facts sufficient to determine or establish a defense to Plaintiff's alleged mental anguish or lack of ability to seek other employment, or to justify the allegation of monetary damages as claimed."

This motion was denied.

Defendants then answered, alleging, among other things, that:

"II.

"On or about March 22, 1973 [sic], Plaintiff was terminated as an employee of District, and was paid the sum of $885.00 by and for two weeks' termination pay plus four weeks vacation pay.

"III.

"Plaintiff has failed to tender back to Defendants said sum of money, alleging that she is entitled to payment for loss of wages up to and including December 23, 1972, plus compensatory damages.

"IV.

"Defendants, and each of them, are entitled to the return of said sums of money, or, in the alternative, and in the event Plaintiff is awarded damages, if at all, credit or offset against said damages in the amount of $885.00."

Plaintiff filed a reply to defendants' answer that stated in part:

"In the event plaintiff is awarded compensation for the period between her termination and the Board hearing afforded her on December 23, 1972 plaintiff will return to the district any amounts paid her at termination which should constitute compensation following March 22, 1972."

There was evidence at trial that plaintiff's salary was $569 per month. Nine months passed between plaintiff's discharge and the formal hearing afforded

her by the defendant hospital district. Thus, plaintiff's loss of salary during this period was $5,121.

The trial court's judgment concluded:

"* * * [P]laintiff shall have judgment against the defendants, and each of them, as follows:

"(1) For the sum of $4,236 for her wages from March 22, 1972 to December 23, 1972;

"(2) For $500 general damages * * *."

It is thus apparent that the trial court's lost-wages award equals plaintiff's salary for nine months ($5,121) less the amount of credit claimed by defendants ($885) for severance and accrued vacation pay.

■■ For purposes of determining a damages formula in a public employe discharge case, it is important to first identify the basis of the discharged employe's cause of action. The possibilities are: (1) a common law breach of contract action; (2) a claim that the discharge was in violation of the substantive standards for discharge stated in an applicable statute or regulation; (3) a claim that the discharge was accomplished in a manner in violation of the procedural requirements of an applicable statute or regulation; (4) a claim that the discharge was, substantively, for a constitutionally impermissible reason; and (5) a claim that the discharge was, procedurally, accomplished in a constitutionally impermissible manner. The first possible cause of action is quite familiar to lawyers and judges, and triggers well-settled damages rules such as the discharged employe's duty to mitigate. *George v. School Dist. No. 8R,* 7 Or App 183, 490 P2d 1009 (1971). The appropriate remedy in the second and fourth situations will ordinarily be reinstatement.

■■ When the claim made and established is that the procedural requirements of law or, as here, the

constitution, were violated for a period of time, in general we believe the appropriate measure of damages to be awarded a public employe is solely the employe's lost wages and other benefits during the period of noncompliance. Applying that standard in this case, plaintiff would obviously be entitled to nine months' wages. Also, if upon discharge plaintiff would have been entitled to severance pay and accrued vacation pay, it would seem erroneous to deduct this amount from her wages for nine months. This is because plaintiff was not validly and effectively discharged until December 23, 1972; she is therefore entitled to all wages and benefits that would have been hers had she, in fact, been discharged on that date.

The above standard of damages fully protects a wrongfully discharged public employe. It would seem to be inappropriate to grant additional damages for such things as "mental anguish" or inability "to seek other employment of a like nature," as claimed by the complaint in this case.[7] In other words, it was probably error for the trial court to deduct plaintiff's severance and accrued vacation pay from her salary for nine months, and also error to enter judgment for $500 as "general damages." However, the first possible error is not before us because plaintiff has not cross-appealed, and apparently consented to the setoff in the trial court. And the second possible error is not before us because we do not understand defendants' vaguely-

---

[7] It is difficult to imagine how defendants' nine-month delay in affording plaintiff a formal hearing regarding her discharge, this delay being a gravamen of plaintiff's complaint, could have prejudiced plaintiff's efforts to obtain other employment. If anything makes it more difficult for plaintiff to obtain other employment, it would be the fact of the discharge, not the delay in holding a hearing. But plaintiff does not in this proceeding question the validity of the discharge.

worded assignment of error, *see* n 2, supra, to contend that the award of general damages was improper.

Defendants' only complaint about the damages award is that plaintiff failed to mitigate her damages by seeking other employment between her discharge on March 22, 1972 and her formal hearing on December 23, 1972. We seriously doubt that any "duty to mitigate" rule is applicable in this context. An Annotation at 22 ALR3d 1047 (1968) collects cases involving damages awardable to a wrongfully discharged teacher.[9] Many of the more recent cases hold that a public employe discharged in violation of statutory or constitutional procedural requirements need not mitigate damages. *See, e.g., Shiffer v. Gibralter Schools,* 45 Mich App 190, 206 NW2d 250 (1973). The reasoning appears to be that unless and until good cause for dismissal is determined at a formal hearing, a public employe is holding himself available for reinstatement to his tenured position, and therefore cannot seek other employment without waiving his claim for reinstatement. *Cf., George v. School Dist. No. 8R,* supra.

But even assuming without deciding that a mitigation rule is applicable in this context, there is no basis in the record to disturb the trial court's damages award on this ground. Plaintiff testified that after her discharge on March 22, 1972, she applied for two different positions in the dietary department of another hospital, but was not offered either job. Defendants failed to produce any evidence that there were other employment opportunities available to plaintiff. When mitigation is applicable, the burden is

[9] While this case does not involve a teacher, the principles governing damages awards would seem to be the same in any public employe discharge case regardless of the position held by the employe.

on the defendants to establish that plaintiff's losses could have been avoided or reduced by obtaining other employment. *Quick v. Swing,* 53 Or 149, 99 P 418 (1909). Remembering that we are reviewing an action at law, we cannot say that as a matter of law this record establishes a failure to take reasonable steps to mitigate damages.

Under the law and the facts of this case, defendants' "assignments of error" present no reason to reverse the decision of the trial court.

Affirmed.