Argued and submitted July 30, reversed and remanded October 15,
Filter's reconsideration denied December 5, 1986, City of Vernonia's reconsideration
denied January 16, both petitions for review denied February 3, 1987 (302 Or 594)

## FILTER,
*Appellant,*

*v.*

## CITY OF VERNONIA et al,
*Respondents.*

(26546; CA A36010)

726 P2d 946

Stephen R. Frank, Portland, argued the cause for appellant. With him on the briefs was Tooze, Marshall, Shenker, Holloway & Duden, Portland.

Thomas W. Kohl, Hillsboro, argued the cause and filed the brief for respondents.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

WARDEN, P. J.

## WARDEN, P. J.

Plaintiff, a former police clerk and matron for the defendant city, brought this action for breach of her employment contract against the city and its police chief. After trial to a jury, the trial court supplemented the jury's answers to special interrogatories and entered judgment for defendants. Plaintiff appealed, and we reversed and remanded. *Filter v. City of Vernonia,* 64 Or App 559, 669 P2d 350 (1983). After further proceedings, the trial court again entered judgment for defendants. Plaintiff appeals and we reverse and remand for a determination of her damages.

Plaintiff worked for approximately three years for the police department as a clerk and matron. She was originally hired by then Police Chief Upham under a CETA program, and a year later was placed on the city's regular payroll. She was terminated on September 21, 1979, by defendant McLaughlin, Upham's successor as police chief, as a result of a dispute over the permanent addition of municipal court reporter duties to her other duties with the police department. She did not receive a pretermination hearing or a written statement of the reasons for her discharge. She requested a post-termination hearing in writing but never received one. Plaintiff maintained that she was entitled to these procedural protections pursuant to a police department manual that Upham had given her when she was hired. The city denied that it had approved the manual or that Upham had the authority to give plaintiff the manual or to tell her to rely on it.

At the first trial, the issue of whether the manual was binding on the city was submitted to the jury by special interrogatories. The jury determined that the city was bound by the manual's provisions as a result of Upham's representations, under the doctrine of apparent authority. The trial court subsequently decided that one of the interrogatories submitted to the jury was inadequate and prepared two new questions which it believed should have been submitted. Then, relying on the parties' stipulation that it could decide all issues remaining after the verdict, the trial court answered the two new questions negatively, thereby holding that the doctrine of apparent authority was inapplicable. Judgment for

defendants was entered, and plaintiff appealed.[1] On appeal, we said:

> "We hold that the jury's answers to the original interrogatories, in the context of the court's instructions and the trial as a whole, adequately resolved the issue of apparent authority and there was no need for the court's additional questions. We therefore reverse and remand for the court to resolve the remaining issues of whether the city violated plaintiff's rights under the manual and, if so, what her damages are." 64 Or App at 564. (Citations omitted.)

On remand, trial was to the court, which concluded that plaintiff had not been wrongfully discharged. It apparently based its conclusion on the following findings:[2] first, that plaintiff had quit, because the police chief did not have the authority to discharge her without approval from the mayor and city council and neither the mayor nor city council had given approval;[3] second, that plaintiff had failed to follow the grievance procedures set forth in the manual; and, third, that no violations of plaintiff's constitutional rights had occurred.[4] Plaintiff appeals, assigning three errors.

◼  She first contends that the trial court erred in finding that she voluntarily quit her job. We agree. There is no evidence in the record to support the finding. In fact, defendants never even argued that plaintiff quit of her own accord. The record is replete with references by defendants' counsel to the city's termination of plaintiff's employment.

---

[1] *Filter v. City of Vernonia, supra,* contains a more detailed discussion of the facts, the interrogatories submitted to the jury and the two new questions prepared and answered by the trial court.

[2] The trial court's letter opinion, expressly incorporated in the judgment, is disjointed and, in parts, inconsistent. *See n 3, infra.* It also discusses matters not relevant to the issues on remand.

[3] The trial court, in its letter opinion, stated that the police chief had "arguabl[y]" terminated the plaintiff but noted that the record shows no formal ratification of the termination by the mayor or city council. The court added that a "ratification of any informal termination would be required at a minimum to render such a termination valid." Given our holding that no evidence exists in the record to support the finding that plaintiff quit her job, the court's finding that the police chief lacked the authority to terminate her bolsters her argument that she was *wrongfully* discharged.

[4] Plaintiff does not assign error to the trial court's conclusion that no violations of her constitutional rights occurred. She cites neither the Oregon nor United States constitution in her brief and made no reference to either constitution in her oral argument. Consequently, the issue of whether her constitutional rights were violated is not before us.

We previously upheld the jury's determination that the manual was binding on the city and was a part of plaintiff's employment contract. *Filter v. City of Vernonia, supra.* The manual provides, in pertinent part:

"14.0    Penalties: Subject to the order of the Chief *the following penalties may be assessed against any member or employee of the department as disciplinary action:*

"A.    Oral reprimand.
"B.    Written reprimand.
"C.    Suspension.
"D.    Demotion.
"E.    *Dismissal from the department.*

"15.0    Department Authority to Discipline: *Department disciplinary authority and responsibility rest with the Chief.* * * *

"* * * * *

"19.0    Informing the Person Being Disciplined: *A member being* investigated or *disciplined shall be informed of the charges as soon as practical* depending on the nature of the investigation and penalties assigned at the time such action is taken. *This will be done in writing by the Chief.*

"20.0    Appeals from Penalties: *Appeals from penalties imposed as disciplinary measures may be filed with the City Administrator in writing, who will present the appeal to the Personnel Committee of the City Council.*

"* * * * *

"26.0    Grievances: *Any member may submit a grievance directly to the Chief for frank discussion.* It must be in writing and signed by the submitting member. It must describe the facts surrounding the grievance and if applicable, state dates, times, persons, places involved. It must be submitted within 5 days of the occurrence grieved.

"26.11    Response to Grievance: Grievances submitted to the Chief shall require a written response within 5 days. If the matter is not resolved to the employee's satisfaction it may be filed in writing to the City Administrator, who will present it to the Personnel Committee of the City Council.

"26.2    Unresolved Grievances: If a grievance cannot be resolved by the Personnel Committee it may be submitted to the entire Common Council of the City of Vernonia." (Emphasis supplied.)

Plaintiff asserts that the trial court erred in holding

that, pursuant to the manual, she was required to file a grievance within five days to protect her right to a hearing. Although it might have served plaintiff's interest to have filed a grievance, we cannot say that the failure to do so resulted in a waiver of her right to challenge her discharge. The permissive language employed in paragraph 26.0 does not mean that the failure to file a grievance within five days constitutes a waiver of the right to a hearing.

■      Paragraph 20.0 provides that an appeal from any penalties imposed under paragraph 14.0 (which includes dismissal from the department) may be requested in writing. We hold that paragraph 20.0 provides a separate appeal process from the grievance procedure provided in paragraph 26.0. Plaintiff by failing to pursue the grievance procedure, did not waive her right under paragraph 20.0 to appeal her discharge. Because it is undisputed that plaintiff did not receive in writing the reasons for her dismissal, that she timely appealed her discharge in writing and that the city failed to respond to the appeal, we hold that the city breached her employment contract.[5]

Plaintiff argues that we should award her damages as a matter of law. We cannot, because an issue of fact exists concerning the amount of damages. We therefore remand to the trial court solely for a determination of those damages.

■      More than seven years have passed since plaintiff was discharged. We therefore address three issues relevant to the determination of damages which may be raised on remand.[6] The first issue is mitigation of damages. The law is well established that in a breach of contract action a discharged employe has a duty to mitigate damages. *Gunsolley v. Bushley,* 19 Or App 884, 895, 529 P2d 950 (1974). The second issue is whether plaintiff was required to accept the position offered by the city in order to mitigate damages. Two days after her termination, the city offered her her old job back on the condition that she accept the new court reporter duties which had prompted the dispute resulting in her discharge. We hold that, as a matter of law, plaintiff had no duty to accept that position. Accepting the offer of reemployment

---

[5] We need not determine the type of hearing to which plaintiff was entitled.

[6] Plaintiff and defendants have briefed and argued these issues before us.

could have resulted in a modification of plaintiff's employment contract with the city, thereby compromising her claim contesting the appropriateness of the additional court reporter duties. An employe may not be forced to accept the precise job duties which are the basis of the claim against the employer in order to mitigate damages. Otherwise, an employer could avoid liability for damages by merely offering an employe in plaintiff's position employment which includes the very job duties that are the subject of the dispute. The third issue concerns the burden of proof. Defendants have the burden to establish that plaintiff's damages by wrongful discharge could have been reduced by obtaining other employment. *Gunsolley v. Bushley, supra,* 19 Or App at 897-898.

Reversed and remanded with intructions to enter judgment for plaintiff after determination of her damages.