Argued and submitted June 22, 1988, reversed and remanded for entry of judgment; otherwise affirmed on appeal and cross-appeal March 8, 1989

## FILTER,
*Respondent - Cross-Appellant,*

*v.*

## CITY OF VERNONIA et al,
*Appellants - Cross-Respondents.*

(26546; CA A45971)

770 P2d 83

Thomas W. Kohl, Hillsboro, argued the cause for appellants - cross-respondents. With him on the briefs was Frost & Kohl, Hillsboro.

Stephen R. Frank, Portland, argued the cause for respondent - cross-appellant. With him on the brief were Matthew K. Rossman, and Tooze, Marshall, Shenker, Holloway & Duden, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Plaintiff, a former police clerk for defendant city, brought this action for breach of an employment contract against the city and its police chief. In *Filter v. City of Vernonia,* 81 Or App 585, 726 P2d 946 (1986), *rev den* 302 Or 594 (1987), we held that defendants had breached the contract and remanded the case to the trial court for a determination of damages. The court awarded damages of $25,095.19. Defendants appeal from that judgment. We reverse in part and remand for entry of a new judgment allowing a setoff.

■ Defendants first assign error to the court's refusal to offset from plaintiff's damages the unemployment compensation benefits that she received after her termination. Defendants contend that, although Oregon's collateral source rule might prevent the deduction of those benefits from her damages in a case involving tortious wrongful discharge, the rule does not prevent a setoff in a breach of contract action. They also argue that, if the benefits are not deducted from the damages in this case, she will receive a double recovery.

In *Seibel v. Liberty Homes, Inc.,* 305 Or 362, 752 P2d 291 (1988), the Supreme Court held that Social Security benefits should not be deducted from a damage award in a breach of employment contract action. However, the court specifically declined to rule on whether unemployment compensation benefits could be deducted. 305 Or at 368; *see also* 305 Or at 373 n 2 (Peterson, C. J., concurring in part and dissenting in part). The court stated that the effect that payments from a public benefits program will have on an employer's liability for wrongful discharge does not depend, as defendant argues here, on whether the discharge is wrongful as a breach of contract or as an intentional tort. 305 Or at 366-67. Rather, the determination of whether a worker's damages in a wrongful discharge case should be reduced by benefits received depends on the source of the benefits. 305 Or at 365.

The Supreme Court reasoned that offsetting Social Security benefits could result in employers performing a cost/benefit analysis that favors breaching employment contracts. The court noted that that is especially true when the benefits that the employer seeks to offset come from a social program funded by parties other than the employer. 305 Or at 367-68. In the case of unemployment compensation, the employer

does contribute to the program sought to be used as a setoff. ORS 657.405 to ORS 656.505. Although the amount of the contribution does not correlate directly with the amount of benefits paid, we believe that the increased rates and direct contributions that can result after an employe's claim are a significant disincentive to employers engaging in the type of cost/benefit analysis contemplated in *Seibel.* Further, unlike with Social Security benefits, allowing an employer to offset unemployment benefits is more likely to prevent either party from enjoying a windfall at the expense of the social program, because the employer ultimately bears the cost through increased rates. *See Dehnart v. Waukesha Brewing Co.,* 21 Wis2d 583, 124 NW2d 664, 671 (1963).[1] Accordingly, we conclude that the trial court erred in refusing to offset plaintiff's unemployment benefits.

■ Defendants next argue that the trial court erred in awarding plaintiff damages for a period during which she allegedly failed to comply with her duty to mitigate damages by seeking employment. In a breach of employment contract action, a discharged employe has a duty to mitigate damages. *Filter v. City of Vernonia, supra,* 81 Or App at 590. As part of plaintiff's damages, the trial court awarded back pay from the date of the termination, September 21, 1979, until the date that she ended her full-time, lesser-paid employment with the subsequent employer, April 31, 1981. Defendants argue that the trial court found that plaintiff had failed to comply with her duty to mitigate damages after September 10, 1980, and, consequently, that it erred in awarding her damages after that date.

---

[1] The court noted in *Seibel* that there is a risk that an employe will receive an "unjustified windfall" if social program benefits are not offset from the damages awarded. The court stated, however, that "whether to save or recapture those costs is properly an issue between the provider of the benefits and its beneficiaries, a policy choice in the design of the program." 305 Or at 369. ORS 657.315(3) provides:

"If a settlement agreement or an award of back pay is made by or between a public employer and its employe or employes, which agreement takes into consideration unemployment insurance benefits paid to such persons, any amount deducted from sums determined due under such settlement or award on account of such benefits paid shall be reimbursed by the public employer to the Employment Division."

Because that recoupment statute applies only to an "agreement or award of back pay made *by or between* a public employer and its employe" (emphasis supplied), it would not permit recoupment in this case.

We conclude that the trial court did not find that plaintiff had failed to mitigate her damages after September 10, 1980. Although the trial court noted that plaintiff's attempt to find employment comparable to her former duties with defendant was not as diligent as it might have been, the court recognized that her lack of diligence was a result of her part-time and later full-time employment with the subsequent employer.[2] The court concluded that plaintiff did not fail in her duty to mitigate until after April 30, 1981. Accordingly, the court did not err in awarding plaintiff damages through that date.

■     Plaintiff cross-appeals, arguing that the court should have awarded damages through March 23, 1984. As noted above, the court concluded that plaintiff failed to mitigate her damages beginning April 30, 1981—the date when she ceased full-time employment with the subsequent employer. Plaintiff challenges that conclusion. Plaintiff testified that she contacted approximately one dozen employers between the time when she began working for the subsequent employer and the date when this action was tried. Plaintiff's expert witness, a vocational consultant, testified on cross-examination that plaintiff reported contacting only three employers during that period. Defendants' expert witness, also a vocational consultant, testified that, in his opinion, reasonable efforts to secure employment include keeping open files with the Comprehensive Employment Training Act program and the Employment Division, which plaintiff did not do, and contacting two to three potential employers each day. On the basis of that testimony, we conclude that the trial court did not err in holding

---

[2] Specifically, the trial court found:

"Plaintiff is entitled to money damages from the date of her discharge, September 21, 1979, until the date she was not working full time for the IRS following the tax year in 1981. Reasoning: [plaintiff] looked for work from the date of her wrongful firing until she was hired by [the] IRS on September 10, 1980—thereafter I find she did not comply with the duty to mitigate—her job seeking was totally inadequate for one seeking employment. The reason I give her until the end of the tax season in 1981 is because anyone starting out on a new job (albeit part time) is in a training stage and emeshed [sic] in learning the new duties, so slacking off looking for work during this period (approximately 50 days) is understandable and acceptable. During the tax season for 1981 she was working full time—looking for work then is really not possible. Thereafter her job seeking was unacceptable (in my opinion) and damages cease. Damages could have been reduced by plaintiff's obtaining employment."

that plaintiff failed to mitigate her damages after April 30, 1981.

█ Plaintiff also argues that she should have been awarded attorney fees pursuant to ORS 652.200(2).[3] In making the argument, plaintiff asks us to overrule *Bruce v. S.M. Motor Co.,* 81 Or App 227, 724 P2d 911 (1986), and *Swartout v. Precision Castparts Corp.,* 83 Or App 203, 730 P2d 1270 (1986). We held in those cases that a claim for damages for a breach of an employment contract is not a claim for the collection of wages under ORS 652.200(2). We see no reason to overrule those cases. Accordingly, the trial court did not err in refusing to award attorney fees.

Reversed and remanded for entry of a judgment not inconsistent with this opinion; otherwise affirmed on appeal and on cross-appeal.

---

[3] ORS 652.200(2) provides:

"In any action for the collection of wages, if it is shown that the wages were not paid for a period of 48 hours, excluding Saturdays, Sundays and holidays, after the same became due and payable, the court shall upon entering judgment for the plaintiff, include in such judgment, in addition to the costs and disbursements otherwise prescribed by statute, a reasonable sum for attorney fees at trial and on appeal for prosecuting said action, unless it appears that the employe has wilfully violated the contract of employment."