Argued and submitted November 22, 1991, affirmed February 26, 1992

## GERMAN AUTO PARTS, INC.,
*Petitioner,*

*v.*

## BUREAU OF LABOR AND INDUSTRIES
and John L. Day, Jr.,
*Respondents.*

(20-90; CA A68306)

826 P2d 1026

Debra L. Hall, Portland argued the cause for petitioner. With her on the brief were Alan M. Lee, and Bullard, Korshoj, Smith & Jernstedt, Portland.

Meg E. Kieran, Assistant Attorney General, Salem, argued the cause for respondent Bureau of Labor and Industries. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

No appearance for respondent John L. Day, Jr.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

DEITS, J.

Durham, J., specially concurring.

## DEITS, J.

Petitioner, employer of respondent Day, fired him for reporting safety and health hazards in the work place to a state agency. Day filed an unlawful employment practice complaint with the Bureau of Labor and Industries (BOLI), which found that petitioner's action violated ORS 654.062(5). Part of the relief that BOLI ordered was an award of lost wages. Petitioner seeks review. Its sole assignment of error is that BOLI erred by not offsetting from the lost wages award unemployment compensation benefits that Day received during the relevant time. We affirm.

Petitioner relies on *Filter v. City of Vernonia*, 95 Or App 550, 770 P2d 83 (1989), an action for breach of an employment contract, where we held that the employer city was entitled to have the unemployment compensation payments that the plaintiff had received offset from the damages for lost wages that resulted from her discharge. We explained:

"Defendants contend that, although Oregon's collateral source rule might prevent the deduction of those benefits from [plaintiff's] damages in a case involving tortious wrongful discharge, the rule does not prevent a setoff in a breach of contract action. They also argue that, if the benefits are not deducted from the damages in this case, she will receive a double recovery.

"In *Seibel v. Liberty Homes, Inc.*, 305 Or 362, 752 P2d 291 (1988), the Supreme Court held that Social Security benefits should not be deducted from a damage award in a breach of employment contract action. However, the court specifically declined to rule on whether unemployment compensation benefits could be deducted. 305 Or at 368; *see also* 305 Or at 373 n 2 (Peterson, C. J., concurring in part and dissenting in part). The court stated that the effect that payments from a public benefits program will have on an employer's liability for wrongful discharge does not depend, as defendant argues here, on whether the discharge is wrongful as a breach of contract or an intentional tort. 305 Or at 366-67. Rather, the determination of whether a worker's damages in a wrongful discharge case should be reduced by benefits received depends on the source of the benefits. 305 Or at 365.

"The Supreme Court reasoned that offsetting Social Security benefits could result in employers performing a

cost/benefit analysis that favors breaching employment contracts. The court noted that that is especially true when the benefits that the employer seeks to offset come from a social program funded by parties other than the employer. 305 Or at 367-68. In the case of unemployment compensation, the employer does contribute to the program sought to be used as a setoff. ORS 657.405 to ORS 65[7].595. Although the amount of the contribution does not correlate directly with the amount of benefits paid, we believe that the increased rates and direct contributions that can result after an employe's claim are a significant disincentive to employers engaging in the type of cost/benefit analysis contemplated in *Seibel*. Further, unlike with Social Security benefits, allowing an employer to offset unemployment benefits is more likely to prevent either party from enjoying a windfall at the expense of the social program, because the employer ultimately bears the cost through increased rates." 95 Or App at 552.

BOLI concluded that *Filter* is distinguishable, because the city there was subject to ORS 657.505(6):

"[A]ny political subdivision subject to this chapter shall in lieu of taxes required of other employers subject to this chapter, pay into the fund an amount equivalent to the amount of all regular benefits and all extended benefits paid out to claimants who during the applicable base year were paid wages by the political subdivision."

Unlike private employers, public employers, like the city in *Filter*, can make dollar-for-dollar reimbursement to the fund for the unemployment benefits that are paid to their former employees. Conversely, petitioner and other private employers are subject to the taxation scheme and the rate structure in ORS 657.405 *et seq.*[1] Under that taxation scheme, an employer does not directly reimburse the fund for unemployment benefits paid out. Rather, all employers are subject to taxation rates based on their claims experience. However, an employer's payments of unemployment taxes do not necessarily cover all, or even a substantial part, of the benefits received by an employee, which are paid from a program fund to which all taxed employers contribute.

---

[1] Under ORS 657.509, public employers may elect to pay taxes rather than make dollar-for-dollar payments under ORS 657.505(6).

The court said in *Seibel v. Liberty Homes, Inc.*, *supra*:

> "We doubt that legislators enacting such programs mean to adopt the theory that it may be economically more efficient to breach an employment contract and pay damages when the cost of such 'efficient' breaches falls on a social benefit program. * * * The effect [would] be inconsistent with the assumptions underlying the replacement income, *unless the program is funded only by the employer* or there is evidence of a contrary legislative policy." 305 Or at 368. (Emphasis supplied.)

Although our reasoning in *Filter* was not specifically limited to public employers who directly fund unemployment benefits paid, those employers clearly come within the rationale in *Seibel*. However, private employers, who do not directly pay the benefits or their dollar equivalent, do not come within that rationale. We are persuaded that, before payments provided through a public benefit program may be offset against an award of damages for lost wages resulting from the wrongful termination of an employee, there must be a significantly greater correlation between the employer's direct expense for the benefits and the actual benefits received than is the case with private employers and unemployment benefits. The disparity between an employer's damages and the unemployment compensation tax liability makes it likely that an employer might engage in a cost/benefit analysis of the kind described in *Seibel*, under which the public could be required to defray a substantial portion of the employer's liability, if an offset were allowed.

Petitioner quotes our statement in *Filter v. City of Vernonia*, *supra*, that "allowing an employer to offset unemployment benefits is more likely to prevent either party from enjoying a windfall." Petitioner omits the words "at the expense of the social program" that follow the quoted language. 95 Or App at 553. The Supreme Court rejected the employer's "windfall" argument in *Seibel v. Liberty Homes, Inc.*, *supra*:

> "[W]hether to save or recapture those costs is properly an issue between the provider of the benefits and its beneficiaries, a policy choice in the design of the program. Absence of a recoupment provision does not help the employer who causes the costs by improperly terminating the employee's regular source of compensation." 305 Or at 369.

Similarly here, the question is not whether there would be a so-called windfall, but whether the funds from the unemployment insurance system should go to the discharged employee, as unemployment benefits, or to the employer, as a public subsidization of the damages that it caused. We agree with BOLI's answer.[2]

Affirmed.

**DURHAM, J.,** specially concurring.

I concur in the majority's holding that the Bureau of Labor and Industries (BOLI) committed no error in declining to deduct unemployment benefits from the back pay portion of its remedial order. I write separately, because I do not accept the majority's rationale.

I would rely solely on *Seibel v. Liberty Homes, Inc.*, 305 Or 362, 752 P2d 291 (1988), to sustain BOLI's order. *Seibel* refused to allow a private employer an offset of Social Security disability benefits from damages in a breach of employment contract action.

Petitioner here seeks to offset unemployment benefits rather than Social Security disability benefits, but that is a distinction without a difference in this context. Applying *Seibel*, I would analyze the statutes relating to unemployment benefits and to BOLI's authority to award back pay. That authority is clear. ORS 659.060(3); ORS 659.010(2). The statutes relating to BOLI and to unemployment compensation have no relevant recoupment provision.[1] ORS 18.580, relating to collateral benefits received for a bodily injury or death, is irrelevant, and petitioner cites no other statute

---

[2] BOLI also concluded that disallowing the offset would promote its statutory duty to provide remedies for discriminatory and other unlawful practices. Although we might agree with that proposition if the slate were clean, in *Seibel v. Liberty Homes, Inc., supra*, the court stressed that the nature of the injurious conduct is not the relevant inquiry. The considerations, rather, are the source of the benefits and whether the employer is solely or directly responsible for funding the payments that it seeks to have deducted from damages.

[1] The Employment Division may recapture benefits obtained by an individual due to fraud or any error. ORS 657.310; ORS 657.315(1), (2). Public employers are obligated to reimburse the division for unemployment benefits deducted from an employee's settlement agreement or back pay award. ORS 657.315(3). However, no statute directs the division to recapture unemployment benefits or obligates the employee to reimburse the division if the employee receives a back pay award.

entitling it to offset unemployment benefits from its back pay obligation. BOLI appears to have properly exercised authority that is common to many tribunals that effectuate labor law policies through back pay awards. *See Labor Board v. Gullett Gin Co.*, 340 US 361, 71 S Ct 337, 95 L Ed 337 (1951); *Kauffman v. Sidereal Corp.*, 695 F2d 343 (1982).[2]

The majority cites *Filter v. City of Vernonia*, 95 Or App 550, 770 P2d 82 (1989), which allowed a public employer to offset unemployment benefits from damages in an employment contract breach action, because that employer paid the Employment Division a substantial contribution toward the employee's unemployment benefits. *Filter* is not controlling here, and the majority seems to agree. However, in *dictum*, the majority purports to apply *Filter's* rationale to this private employer and suggests that an offset would be proper if there were "a significantly greater correlation between the employer's direct expense for the benefits and the actual benefits received than is the case with private employers and unemployment benefits." 111 Or App at 526.

The *dictum* is unwarranted. It will tend to create different offset rules for private and public employers, a consequence that the legislature probably did not intend. *Filter* cited no statute. It determined only that the public employer had made a substantial contribution to the state program that paid the unemployment benefits. *Seibel v. Liberty Homes, Inc.*, *supra*, requires an analysis of the statutory policy of the benefit program and of the agency's authority, not only the extent of an employer's contribution to social program benefits. We have no occasion here to perform that analysis in the context of public employment.

The majority's *dictum* also will tend to inhibit BOLI and other tribunals from properly exercising their authority regarding back pay and offset issues in public employment cases. For example, BOLI's order suggests, also in *dictum*, that the company would have a right to an offset if it were a public employer, citing *Filter v. City of Vernonia*, *supra*. BOLI may believe that an offset is needed to prevent a "windfall" for the employee, which is an argument relied on in *Filter*. The majority opinion discredits that, and I agree. Whether

---

[2] Additional cases are collected in *Annot.*, 66 ALR Fed 88 (1984).

BOLI's suggestion about a public employer's right to an offset is correct will have to await an appropriate case. In the meantime, the proper course for BOLI and other tribunals is to decide offset questions for all employers by analyzing all of the policies that underlie the benefit program and the authority of the agency, as *Seibel* requires.