Argued and submitted September 12, decision of Court of Appeals reversed; order of Fair Dismissal Appeals Board remanded to Fair Dismissal Appeals Board for modification in accordance with this opinion December 21, 2006

Sherry ZOTTOLA,
*Petitioner on Review,*

*v.*

THREE RIVERS SCHOOL DISTRICT
and Fair Dismissal Appeals Board,
*Respondents on Review.*

(FDA-01-5; CA A122463; SC S52944)

149 P3d 1151

Elizabeth A. Joffe, of McKanna Bishop Joffe & Sullivan, LLP, Portland, argued the cause and filed the brief for petitioner on review.

Nancy Hungerford, Oregon City, argued the cause and filed the brief for respondent on review Three Rivers School District.

Christina M. Hutchins, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review Fair Dismissal Appeals Board. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before De Muniz, Chief Justice, and Carson, Gillette, Durham, and Balmer, Justices.**

GILLETTE, J.

---

** Riggs, J., retired September 30, 2006, and did not participate in the consideration or decision of this case. Kistler and Walters, JJ., did not participate in the consideration or decision of this case.

## GILLETTE, J.

The issue in this administrative law case is whether the Fair Dismissal Appeals Board (FDAB) erred in concluding that a school district could offset certain unemployment benefits against a back-pay award that FDAB ordered the school district to pay to a wrongfully terminated employee. The Court of Appeals, in a brief per curiam opinion, affirmed the order of FDAB and, hence, the offset. *Zottola v. Three Rivers School Dist.*, 202 Or App 235, 120 P3d 1255 (2005) (*Zottola II*). We allowed review and, for the reasons that follow, now reverse the decision of the Court of Appeals and modify the order of FDAB.

The facts are undisputed. Zottola is a teacher in the Three Rivers School District (the district). The district school board dismissed her on August 6, 2001. Zottola appealed that dismissal to FDAB, which concluded that her dismissal was unlawful and ordered the district to reinstate her. The district appealed that order to the Court of Appeals. That court affirmed FDAB's order without opinion. *Zottola v. Three Rivers School Dist.*, 188 Or App 489, 72 P3d 684 (2003) (*Zottola I*). The district thereafter reinstated Zottola, effective January 7, 2003.

The district then moved FDAB for a determination of the amount of back pay that Zottola should receive. In doing so, the district contended that FDAB should reduce the back-pay award by the amount of unemployment benefits that Zottola had received after her dismissal. FDAB agreed in part. It ruled that the district was entitled to offset from Zottola's back-pay award the amount that the Oregon Employment Department had billed the district for the employment benefits that Zottola had received after her dismissal.

In arriving at its conclusion, FDAB began by reviewing the state unemployment compensation statutory scheme. FDAB noted that, under that scheme, eligible employees receive unemployment benefits from the Unemployment Compensation Trust Fund (the Trust Fund), to which employers contribute in one of two ways. Some employers, generally private entities, contribute through quarterly taxes

on employee wages. *See* ORS 657.505(2) (so providing). Those employers are known as "contributing employers." Other employers, such as the state and its political subdivisions (including the school district here), contribute by paying quarterly bills that the Oregon Employment Department sends them. Those bills reflect the amount that the Trust Fund actually paid out in benefits to the employer's employees during the quarter. *See* ORS 657.505(5), (6) (so providing). Those employers are known as "reimbursing employers."

FDAB then reviewed two Court of Appeals cases that it found to be dispositive: *Filter v. City of Vernonia*, 95 Or App 550, 770 P2d 83 (1989), and *German Auto Parts v. Bureau of Labor and Ind.*, 111 Or App 522, 826 P2d 1026 (1992). FDAB concluded that those cases stood for the proposition that payments provided though public benefits programs such as the unemployment compensation program may be offset against an award for damages for lost wages resulting from wrongful termination if a significant correlation exists between the employer's direct expense for the benefits and the actual benefits received by the employee. *See German Auto Parts*, 111 Or App at 526 (stating and applying principle); *Filter*, 95 Or App at 552-53 (same). It followed, according to FDAB, that an offset of certain unemployment benefits against back pay was appropriate in this case because the school district, as a reimbursing employer, had paid dollar-for-dollar for those benefits that it sought to offset from Zottola's back pay.

On Zottola's petition for judicial review, the Court of Appeals affirmed, citing its earlier decisions in *Filter* and *German Auto Parts*, as well as this court's decision in *Seibel v. Liberty Homes, Inc.*, 305 Or 362, 752 P2d 291 (1988). We allowed Zottola's petition for review.

To determine whether it is permissible for the school district to offset unemployment benefits in circumstances like those presented in this case, we begin by considering the statute that authorizes FDAB to order the school district to pay back pay. That statute, ORS 342.905(7), provides:

"(a)  Subject to subsection (6) of this section and paragraph (b) of this subsection, if the Fair Dismissal Appeals

Board panel finds that the facts relied on to support the recommendation of the district superintendent are untrue or unsubstantiated, or if true and substantiated, are not adequate to justify the statutory grounds cited as reason for the dismissal * * *, and so notifies the contract teacher, the district superintendent, the district school board and the Superintendent of Public Instruction, *the teacher shall be reinstated and the teacher shall receive such back pay as ordered by the Fair Dismissal Appeals Board panel for the period between the effective date of the dismissal * * * and the date of the order reinstating the teacher, or the date when the district actually reinstates the teacher, whichever is later*. However, nothing in this section requires a school district to pay the teacher until the reinstatement occurs if the district has other legal grounds for not reinstating the teacher."

(Emphasis added.)

The operative wording in the statutory text is directive: "the teacher *shall receive* such back pay as ordered by" FDAB. (Emphasis added.) At the same time, and notwithstanding the use of the mandatory word "shall," that directive refers to such back pay "as ordered by" FDAB. The question before the court, then, is whether that wording permits FDAB to offset unemployment benefits like those at issue here against otherwise-merited back pay.

Nothing in ORS 342.905(7) or in any related statute expressly authorizes (much less requires) FDAB to offset unemployment compensation against back pay. Indeed, the words of the statute indicate that the legislature did not contemplate such an offset: the employee is to receive "such *back pay* as ordered by" FDAB. (Emphasis added.) The phrase "back pay" is not defined in the statute, but it commonly is understood to mean wages and fringe benefits that an employee would have received, but for some legally impermissible action by the employer. *See Black's Law Dictionary* 148 (8th ed 2004) ("back pay award" is judicial or quasi-judicial determination that an employee "is entitled to accrued but uncollected wages or benefits"). "Wage," in turn, is defined as "payment for labor or services." *Id.* at 1610. Unemployment compensation benefits are not wages; they

are not payments for labor or services. Rather, they are payments designed to provide interim assistance while a worker seeks to re-enter the labor force. Moreover, whether or not a wrongfully dismissed employee received unemployment compensation benefits is unrelated to the specific amount of wages that that employee would have earned were it not for the wrongful dismissal, although the level of benefits may be related to the employee's wage level. Thus, our review of the wording of ORS 342.905(7) itself suggests that FDAB's authority is confined to a determination of the amount of back pay, *i.e.*, wages and benefits, that the school district owes to the employee.

The school district argues that the flexibility to offset unemployment compensation benefits against back pay inheres in the words "such * * * as ordered by" FDAB. We think the school district leans too heavily on that slender reed. Under ORS 342.905(7), FDAB clearly may decide such debatable factual issues as the relevant dates on which the back-pay period begins and ends and the employee's wage level for purposes of awarding back pay, if the parties disagree about those matters. We understand the statutory phrase "such * * * as ordered by" to be a recognition of and an allowance for the variable answers that FDAB might give to such questions, among others, in response to a bona fide dispute between the parties. But we do not think that that wording reasonably may be read in context to authorize FDAB to *redefine* "back pay" to exclude money that an employee received during the back-pay period pursuant to an unrelated statutory benefit program.

This court considered a similar issue in *Seibel*, 305 Or 362. In that case, a jury awarded a plaintiff back pay in a wrongful discharge case. On appeal, the Court of Appeals agreed with the defendant employer that the trial court should have reduced the verdict by the amount of social security disability benefits that the plaintiff had received and would continue to receive until his projected retirement date.

This court reversed that Court of Appeals decision. The court stated that "[w]hether the statutory benefit to a discharged worker should reduce the cost to the employer of choosing to breach the employment contract *is properly an*

interpretation of statutory policy." *Id.* at 367. The court then examined the policy behind the statute authorizing social security disability benefits and concluded that "support from social funds such as unemployment compensation, disability benefits, or welfare is intended as an exceptional replacement" for wages. *Id.* The court further observed that those programs are funded in different ways and that they differ in the speed and finality of their benefit determinations; however, according to the court, those exigencies

> "should play no role in the employer's liability for wrongfully discharging an employee. A trial of the employee's contract action should not be turned into a trial of the employee's potential claims for benefits from some administrative program, nor should the outcome depend simply on whether cash benefits happen to have been paid before the trial."

*Id.* at 369. Finally, the court recognized that, although statutes respecting ancillary social programs may or may not provide for recapturing some or all of the benefits received pursuant to such programs when an employee successfully pursues a wrongful discharge claim,

> "whether to save or recapture those costs is properly an issue between the provider of the benefits and its beneficiaries, a policy choice in the design of the program. Absence of a recoupment provision does not help the employer who causes the costs by improperly terminating the employee's regular source of compensation."

*Id.*

This court's analysis in *Seibel* is equally apt here. Unemployment compensation serves a different purpose from a back-pay award under ORS 342.905(7), and whether or not an employee received unemployment compensation has no necessary connection with evaluating a school district's liability for wrongfully dismissing a teacher. Likewise, whether or not a dismissed employee is permitted to keep unemployment benefits received after a successful challenge to her dismissal is properly an issue between the Oregon Employment Department and the employee; the district has no stake in the question. The district's arguments are not well taken.

This court in *Seibel* implied in *dictum* that the result in that case might have been different if the replacement income or social benefit were funded only by the employer or if there were evidence of a contrary legislative policy. 305 Or at 368. That, presumably, is the reason that the Court of Appeals cited *Seibel* in its per curiam decision here. The school district has argued that, because it paid "dollar-for-dollar" for certain of the unemployment compensation benefits that Zottola received after her dismissal, this is a case of a social benefit being funded only by the employer. We disagree. Zottola received unemployment compensation benefits from the Employment Department, not from the school district. Zottola would have received those benefits even if the school district had defaulted on its quarterly bill from the Employment Department. *See* ORS 657.507 and ORS 657.508 (setting out consequences for employer's failure to make required contributions). The fact that the amount that the school district contributed to the unemployment compensation program operated by the Employment Department on account of Zottola's claim for unemployment compensation reflected the dollar amount of that claim does not change the fact that the school district did not itself provide the benefit that it sought to offset from the back-pay award.

For the foregoing reasons, we conclude that FDAB does not have authority under ORS 342.905(7) or any other statute of which we are aware to order an offset to a back-pay award under that statute in the amount of certain unemployment compensation benefits that a wrongfully dismissed employee received after dismissal. It follows that FDAB erred to the extent that its order permitted the school district to offset such benefits from Zottola's back-pay award and that the Court of Appeals erred in affirming that order.

The decision of the Court of Appeals is reversed. The order of the Fair Dismissal Appeals Board is remanded to the Fair Dismissal Appeals Board for modification in accordance with this opinion.